Brigid K. Ndege (NY Bar No. 5046925)
**BRYAN CAVE LEIGHTON PAISNER LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:    (312) 602-5000
Facsimile:    (312) 602-5050
Email:        brigid.ndege@bclplaw.com

Kyle S. Hirsch (Admitted *Pro Hac Vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:    (602) 364-7000
Facsimile:    (602) 364-7070
Email:        kyle.hirsch@bclplaw.com

*Counsel to Romspen Investment LP, as agent and servicer*
*for TIG Romspen US Master Mortgage LP and*
*Fund Investment 149, LLC*

**Hearing Date: August 12, 2025 at 2:00 p.m.**
**Objection Deadline: August 5, 2025**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **1300 Desert Willow Road, LLC,** | **Case No. 25-11375 (PB)** |
| **Debtor.** | |

## NOTICE OF MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE OR, ALTERNATIVELY, APPOINT A CHAPTER 11 TRUSTEE

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion (the "Motion") of Romspen Investment LP, as agent and servicer for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC ("Romspen"), seeking entry of an order  (i) dismissing the above-captioned chapter 11 case of 1300 Desert Willow Road, LLC (the "Debtor") pursuant to 11 U.S.C. § 1112(b) or (ii) alternatively, appointing a chapter 11 trustee under 11 U.S.C §§ 1112(b) or 1104(a) shall be held via zoom before the Honorable Philip Bentley, Bankruptcy Judge, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 on **August 12, 2025 at 2:00 p.m.**, or as soon thereafter as counsel can be heard.

**PLEASE TAKE FURTHER NOTICE**, that the Motion will be heard on **August 12, 2025, at 2:00 p.m.** through Zoom for Government.  Participants in the hearing are required to register their appearance by 4:00 p.m. the day before the hearing utilizing the e-Court Appearances tool at https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in writing, should conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court, and shall be served upon (a) counsel for Romspen via email (kyle.hirsch@bclplaw.com ) and (brigid.ndege@bclplaw.com); (b) the Office of the United States Trustee, Attn. Rachael Siegel at: rachael.e.siegel@usdoj.gov and USTPRegion02.NYECF@USDOJ.GOV; and (c) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **August 5, 2025**.

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

DATED this 10th day of July 2025.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/Brigid K. Ndege*

Brigid K. Ndege (NY Bar No. 5046925)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:    (312) 602-5000
Facsimile:    (312) 602-5050
Email:    brigid.ndege@bclplaw.com

Kyle S. Hirsch (*Pro Hac Vice*)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:    (602) 364-7000
Facsimile:    (602) 364-7070
Email:    kyle.hirsch@bclplaw.com

***Counsel to Romspen Investment LP, as agent and servicer for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC***

Brigid K. Ndege (NY Bar No. 5046925)
**BRYAN CAVE LEIGHTON PAISNER LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:    (312) 602-5000
Facsimile:    (312) 602-5050
Email:    brigid.ndege@bclplaw.com

Kyle S. Hirsch (Admitted *Pro Hac Vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:    (602) 364-7000
Facsimile:    (602) 364-7070
Email:    kyle.hirsch@bclplaw.com

*Counsel to Romspen Investment LP, as agent and servicer*
*for TIG Romspen US Master Mortgage LP and*
*Fund Investment 149, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **1300 Desert Willow Road, LLC,** | **Case No. 25-11375 (PB)** |
| **Debtor.** | |

## MOTION TO DISMISS DEBTOR'S CHAPTER 11 CASE
## OR, ALTERNATIVELY, APPOINT A CHAPTER 11 TRUSTEE

Romspen Investment LP ("Romspen Investment"), as agent and servicer for TIG Romspen US Master Mortgage LP ("TIG") and Fund Investment 149, LLC ("Fund Investment," collectively with TIG and Fund Investment, "Romspen"), hereby seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) dismissing the above-captioned chapter 11 case of 1300 Desert Willow Road, LLC (the "Debtor") pursuant to 11 U.S.C. § 1112(b) or alternatively, (ii) appointing a chapter 11 trustee under 11 U.S.C §§ 1112(b) and 1104(a). This motion is supported

by the attached declaration ("<u>Declaration</u>") and the exhibits accompanying the same, and the entire record before the Court in this case.

<h2 align="center"><u>PRELIMINARY STATEMENT</u>[1]</h2>

1.      The Debtor is a single asset real estate debtor whose sole asset and source of revenue is a partially-occupied commercial building located in Los Lunas, New Mexico.

2.      On December 29, 2022 – after the Debtor had failed to pay Romspen as agreed, and failed to properly manage the Property resulting in significant tenant departures, revenue declines, resignation of the professional property manager, and inability to pay ordinary and essential operating expenses (*e.g.*, utilities and property management fees) – Romspen filed an application in the New Mexico state court for the appointment of a receiver.  The Receiver took possession and control on January 18, 2023, and remained in possession and control of the Property from that date until the Debtor filed this case on the eve of Romspen's properly-noticed, scheduled non-judicial trustee's sale.

3.      This case is a classic two-party dispute and bad faith filing.  The Debtor has no reasonable prospect of reorganizing and the value of the Property will continue to deteriorate under the Debtor's control.  The Debtor is using this filing as a sword against its lender, who allowed the Debtor *more than two years* post-default to sell the Property or refinance the debt.  This Court should show no deference to this Debtor.

4.      Accordingly, Romspen asks that the Court dismiss this case as a bad faith filing so that Romspen can complete its foreclosure and return the Property into responsible hands.  Alternatively, and although it will cost the estate and Romspen significant expense, if the Court

---

[1]      Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed below.

determines not to dismiss this case, the Court should appoint a chapter 11 trustee because the Debtor has already shown its inability to manage its sole real estate asset.

**JURISDICTION, VENUE, AND STATUTORY BASIS**

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6.      Although the Debtor is a New Mexico limited liability company, conducts its business in New Mexico, and its single real estate asset is located in New Mexico, the Debtor asserts a principal place of business within the vicinity of this Court.  Thus, for purposes of this motion only and without waiving its right to contest the issue, Romspen asserts that venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

7.      The statutory bases for the relief requested are 11 U.S.C. §§ 105, 1112(b) and 1104(a)(1).

**RELEVANT BACKGROUND**

**A.      The Bankruptcy Case**

8.      On June 22, 2025, (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition (the "<u>Petition</u>") for protection under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")[2] admitting in Paragraph 7 of its Petition that it filed as a single asset real estate debtor.[3]

9.      The Debtor admits that Romspen is the only creditor whose claim is secured by the Property.  ECF No. 1, Schedule D, para. 2.1.

---

[2]      The use of sections herein shall refer to the Bankruptcy Code, except as otherwise specified.

[3]      The Debtor failed to file a corporate resolution authorizing the bankruptcy filing in accordance with S.D.N.Y. LBR 1074-1(a); the affidavit required by S.D.N.Y. LBR 1007-2; or the corporate ownership statement, all of which are due at the time of filing.  The Debtor was put on notice of these deficiencies and had to correct them by July 7, 2025, as set forth on the case docket.

10.     The Debtor asserts there are only two general unsecured creditors:  Equity Funding, LLC ("Equity Investor") with a contingent, unliquidated, disputed claim of $5 million; and the Meltzer law firm with a legal fee claim of $50,000.  *Id.*, Schedule E/F, para. 3.1 and 3.2.

11.     Romspen disputes that Equity Investor is a creditor; rather, Equity Investor's "claim" is a preferred equity investment, and is thus properly characterized as an "interest."

12.     Accordingly, this case is essentially a two-party dispute between a borrower and its lender.

**B.     Romspen's Interest in the Property.**

13.     Romspen made a loan to the Debtor in the original principal amount of $20,100,000.00 (the "Loan").

14.     The Loan is evidenced by, among other things: (i) that certain *Loan Agreement* dated April 4, 2022, between Romspen and the Debtor (as amended, modified, and/or restated from time to time, the "Loan Agreement") and (ii) that certain *Promissory Note*, dated April 4, 2022, in the principal sum of $20,100,000.00, executed by Debtor on March 29, 2022 (the "Initial Note" and as amended, modified, and/or restated from time to time, the "Note"). True and correct copies of the Loan Agreement and the Initial Note are attached to the Declaration as Exhibits 1 and 2, respectively.

15.     As of June 1, 2025, the amount of indebtedness the Debtor owes Romspen under the Note is no less than **$26,393,983.03** in unpaid principal, accrued and unpaid interest, and incurred unpaid loan fees.[4]  Romspen asserts that the value of the Property, as of the Petition Date, is only slightly higher than the amount of the outstanding indebtedness.

---

[4]     The supporting Declaration provides itemized detailed of the total outstanding indebtedness including total principal, interest, and loan fees through June 1, 2025, as well as supporting records. *See* Declaration at ¶¶ 26-28 and Exhibit 21.

16.    To secure the Debtor's payment and performance obligations under the Loan, the Debtor granted Romspen, among other things: (i) a senior-priority lien and security interest in and to that certain real property located at 1300 Desert Willow Road, Los Lunas, New Mexico and all buildings, improvements, tenants and all personal property necessary for the operation thereof (the "Property") as set forth in that certain *Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing*, given by the Debtor in favor of Romspen as beneficiary, recorded as Instrument No. 202204650 in the Valencia County, New Mexico Real Property Records (the "Deed of Trust"); (ii) that certain *Assignment of Leases and Rents* dated as of April 4, 2022, given by the Debtor in favor of Romspen and recorded at Instrument No. 202204651 in the Valencia County, New Mexico Real Property Records (the "Assignment of Rents"); and (iii) that certain *Security Agreement* dated as of April 4, 2022, given by the Debtor in favor of Romspen (the "Security Agreement").  Romspen perfected its lien interests in the Debtor's personal property as evidenced by, among other things, the *UCC Financing Statement* filed in the New Mexico Secretary of State's Office at File No. 20220131401A (the "UCC").  True and correct copies of the Deed of Trust, the Assignment of Rents, the Security Agreement, and the UCC are attached to the Declaration as Exhibits 5-8, respectively.  The Loan Agreement, the Note, the Deed of Trust, the Assignment of Rents, the Security Agreement and the UCC, along with all other documents evidencing and/or securing the Loan, are referred to herein as the "Loan Documents."

### C.    Debtor's Defaults, Receiver Appointment, Romspen's Agreements to Forbear.

17.    By letter from Romspen to the Debtor dated October 11, 2022, Romspen notified the Debtor of defaults under the Loan Documents – specifically payment defaults (failure to pay interest payments and late fees equaling more than $235,000) and the loss of more than 85,000 square feet of occupancy at the Property.  A true and correct copy of the October 11, 2022 letter is

attached to the Declaration as <u>Exhibit 9</u>.  The Debtor failed to cure the defaults, and as a result the entire outstanding indebtedness due and owing under the Loan became immediately due and payable.

18.     Romspen also learned that the Debtor's retained property manager had terminated its agreement because, Romspen believes, the Debtor failed to pay the property manager the agreed fees and expenses owed.  Thus, under the Debtor's control, the Property was not being maintained, critical operating expenses (*e.g.*, utilities) were not being paid, and tenants were vacating resulting in diminished revenue.

19.     On December 29, 2022, Romspen filed the *Verified Complaint and Application for Expedited Appointment of Receiver* in the Thirteenth Judicial District Court in New Mexico, Valencia County (the "<u>New Mexico Court</u>")[5] seeking the appointment of a receiver.  On January 18, 2023, the New Mexico Court judge entered his order (the "<u>Receivership Order</u>") finding that the "appointment of a receiver is necessary to manage and operate the Property, to preserve and protect the collateral, and to prevent waste," and appointed Cascade Capital Group, LLC, by and through Mark Calvert its Managing Director, as receiver (the "<u>Receiver</u>").  Receivership Order, at ¶¶ 16-17.  A true and correct copy of the Receivership Order is attached to the Declaration as <u>Exhibit 11</u>.  The Receiver thereafter assumed control over and took possession of the Property until the Petition Date.

20.     After the appointment of the Receiver, Romspen and the Debtor negotiated a series of forbearance agreements beginning with that certain *Forbearance Agreement* dated January 24, 2023 and culminating with the *Seventh Amendment to Second Forbearance Agreement* dated effective as of February 21, 2025 (the "<u>Seventh Amendment</u>").  The Debtor requested that

---

[5]     Case No. D-1314-CV-2022-00809.

Romspen forbear so the Debtor could attempt to repay Romspen by selling the Property or refinancing the Loan.  Romspen agreed, but is unaware of any efforts the Debtor actually undertook to sell the Property.  In any event, the Debtor ultimately failed and/or refused to pay the agreed extension fee required under the Seventh Amendment, resulting in forbearance period termination.

21.     Without violating any of the negotiated forbearance agreements, Romspen periodically posted the Property for non-judicial foreclosure sale in accordance with applicable state law.  The earliest sale date was set for July 21, 2023, but during the forbearance periods, Romspen instructed the trustee to postpone the sale.  After the Debtor failed to extend the forbearance period under the Seventh Amendment, however, Romspen informed the Debtor of its intent to proceed with the non-judicial foreclosure sale scheduled for March 17, 2025.

22.     As a desperate measure, the Debtor sought injunctive relief from the New Mexico Court.  Based on representations that the Debtor had secured a "term sheet" to partially or fully refinance loan within a matter of weeks, the New Mexico Court granted the Debtor a brief reprieve that expired in June 2025.  Romspen thereafter prepared to proceed with the non-judicial foreclosure sale, scheduled for June 23, 2025.

23.     Having worn out Romspen's willingness to voluntarily forbear; having exhausted its non-bankruptcy avenues through the New Mexico Court; and facing the imminent loss of the Property, the Debtor filed this chapter 11 petition to further frustrate Romspen's legitimate enforcement rights.

## ARGUMENT

24.     This Court should dismiss the Debtor's chapter 11 case for "cause". Cause exists because the Debtor (a) commenced this case in bad faith, (b) lacks any viable prospect of

reorganization, and (c) no unusual circumstances exist warranting bankruptcy protection. In the alternative, if the Court determines not to dismiss this case, the Court should appoint a chapter 11 trustee to protect, preserve, and ultimately maximize the value of the Debtor's estate.

## I.      Cause Exists to Dismiss This Case.

25.      On request of a party in interest, and after notice and a hearing, the Court *shall* convert or dismiss a case for "cause" unless the court determines that the appointment of a trustee or examiner is in the best interests of creditors and the estate.  11 U.S.C. § 1112(b)(1).  The term "cause" is not exhaustively defined in the Bankruptcy Code but includes a bad faith filing or "a substantial or continuing loss or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A); *In re C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310-11 (2d Cir. 1997).

### A.      The Debtor Filed This Case In Bad Faith.

26.      In determining whether a bankruptcy petition was filed in bad faith, courts consider any factors "which evidence an intent to abuse the judicial process and the purposes of the reorganization provisions" or "factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of ... creditors to enforce their rights.'"  *In re Syndicom Corp.*, 268 B.R. 26, 49-50 (Bankr. S.D.N.Y. 2001) (internal citations omitted).

27.      The Second Circuit has found the following non-exhaustive list of eight factors (the "C-TC Factors") to be indicative of a bad faith filing:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including

the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*See In re C-TC*, 113 F.3d at 1311; *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334-35 (Bankr.

S.D.N.Y. 2001).

28.     Here, the *C-TC* factors support dismissal:

   a.   **One Asset that is the Subject of Foreclosure due to Debt Defaults and Arrearages.** The Debtor's only asset is the Property. Romspen has been entitled to foreclose for more than two years due to the Debtor's defaults and mismanagement (but agreed to forbear during much of that timeframe). *See In re C-TC*, 113 F.3d at 1312 (finding bad faith where the debtor's only asset was the subject of a foreclosure action brought as a result of a default in the underlying mortgage). Factors 1 and 3 favor dismissal as a bad faith filing.

   b.   **Few Unsecured Creditors.** The Debtor scheduled only two unsecured creditors, a law firm with a claim of $50,000 and Equity Lender, who is properly recharacterized as an interest holder. Factor 2 favors dismissal as a bad faith filing.

   c.   **Two-Party Dispute**. The Debtor is in an active dispute with its sole secured creditor, Romspen. The Debtor owes Romspen more than $26 million, which can be resolved through the state non-judicial foreclosure process and/or through the New Mexico Court. This Court's expertise is not necessary to address this straight-forward borrower-lender dispute. Factor 4 favors dismissal as a bad faith filing.

   d.   **Timing.** This two-party dispute led to the Debtor filing this case as a last-ditch effort to stave off foreclosure. The Debtor elected to seek the protections of this Court solely to delay and frustrate Romspen's legitimate collection efforts. Factor 5 favors dismissal as a bad faith filing.

   e.   **Modest Cash Flow That Cannot Satisfy Obligations**. As a result of the Receiver's efforts, the Property now does cash flow positive <u>without considering any debt service payments</u>. Once Romspen's debt service (even at the non-default rate) is considered, however, the Debtor lacks adequate cash flow to maintain operating expenses. *See Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992) (holding that the debtor having little or no cash flow is indicia of bad faith). And prior to the Receiver's appointment in January 2023, the Debtor failed to pay critical operating expenses including utilities. *See In re C-TC*, 113 F.3d at 1312 (holding that debtor's failure to pay expenses on its assets evidences a bad faith filing). Factor 7 favors dismissal as a bad faith filing.

f.   **No Employees.**  The Debtor has no employees.  *See In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021) (finding a lack of employees was indicia of a bad faith filing).  Factor 8 favors dismissal as a bad faith filing**.**

Considering the facts of this Case, the Court can and should conclude that the Debtor filed this case in bad faith and immediately dismiss for cause.

**B.    The Estate Is Diminishing In Value And Reorganization Is Not Likely, Warranting Dismissal.**

29.    "Cause" to dismiss specifically includes (i) substantial or continuing loss to or diminution of the estate, and (ii) the absence of a reasonable likelihood of rehabilitation.  11 U.S.C. § 1112(b)(4)(A).

30.    Here, the Debtor does not have adequate cash flow to pay its daily operating expenses.  All of the revenue generated by the estate constitutes Romspen's cash collateral, but if revenues are used to pay operating expenses (Romspen does not consent), the cash flow is insufficient to pay operating expenses <u>and</u> Romspen's debt service. Thus, with each passing day, Romspen's claim increases through the accrual of interest and attorneys' fees.  Property taxes continue to accrue with no prospect of payment, the Property will undergo ordinary wear-and-tear, and the estate will lack the funding for extraordinary expenses or capital improvements.

31.    Further, the last time the Debtor had responsibility for managing the Property, critical expenses such as utilities went unpaid, and the Property lost significant revenue due to tenant departures.

32.    Under these circumstances, no reorganization is likely, let alone a reorganization that provides for a "speedy, efficient reorganization on a feasible basis." *In re Fraternal Composite Serv.*, 315 B.R. 247, 249 (Bankr. N.D.N.Y. 2003)(quoting *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 825 (9th Cir. 1994)).  Statutory "cause" justifies dismissing this case.

### C.    There Are No Unusual Circumstances.

33.    The Debtor has the burden of demonstrating "unusual circumstances" and one of the enumerated excuses from dismissal under Section 1112(b)(2). *In re Ridge View Farm, LLC*, Nos. 12-31700, 11-30463, 2012 Bankr. LEXIS 5716, at *25-26 (Bankr. N.D.N.Y. Dec. 10, 2012).

34.    Here, there are no unusual circumstances – this is a two-party dispute for which the Debtor has had ample time to repay its primary (and sole material) creditor, Romspen.  The Debtor failed, and is using this case as a weapon against its sole adversary.

35.    As set forth above, the Debtor cannot establish any likelihood of confirming a plan.

36.    The reasons for "cause" cannot be cured or justified.

## II.    Trustee Appointment Is Justified As an Alternative.

37.    Even when there is cause for dismissal under Section 1112(b)(1), the Court may elect to appoint a chapter 11 trustee under Section 1104(a) if such appointment is in the best interests of creditors and the estate.  While Romspen believes dismissal is the best option for creditors and the estate given, among other things, the lack of a viable reorganization path and the expense associated with a chapter 11 trustee, the Court has the circumstantial basis to appoint a chapter 11 trustee here.

38.    Section 1104(a)(1) permits appointment of a trustee if there is "fraud, dishonesty, incompetence, or gross management of the affairs of the debtor" either before or after the commencement of the case.  11 U.S.C 1104(a)(1); *In re 1031 Tax Grp., LLC*, 374 B.R. 78, 86 (Bankr. S.D.N.Y. 2007).  The Court is given wide latitude in making its determination.  *Id.*

39.    The New Mexico Court has already found that the Debtor's management is incompetent to manage the Property. Indeed, in the Receivership Order, the New Mexico Court concluded that the appointment of a court officer (the Receiver) is **necessary** to manage and

operate the Property. *See* Ex. 11, Receivership Order, ¶ 16. The Receiver has remained in possession and control of, and has been effectively managing, the Property since January 2023 – until forced to turnover possession and control upon the filing of the Petition.

40.    When the Debtor last had possession of and control over the Property, critical expenses were unpaid, tenants abruptly vacated without paying rent, and the property manager resigned leaving the day-to-day Property management duties unperformed. One tenant, for example, sent the Debtor a letter detailing the Debtor's incompetence in managing the Property, which included: the Debtor's failure to pay Public Service Company of New Mexico (which, as a result, threated to shut off electrical service) as well as a failure to inspect and test the fire sprinkler system. In addition, and according to the Tenant, the Property suffered repeated roof leaks and a lack of landscaping services under the Debtor's care. *See* Declaration at ¶23 and Exhibit 10.

41.    Given the history of incompetence, the Court should not permit the Debtor to remain in control of the estate's sole asset.

42.    The Court may also appoint a trustee if that is in the best interests of creditors, any equity security holders, and the other interests of the estate, even in the absence of "cause." 11 U.S.C. § 1104(a)(2); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990). Section 1104(a)(2) allows courts to "eschew rigid absolutes and look to the practical realities and necessities." *See In re Taub*, 427 B.R. 208, 227 (Bankr. E.D. N.Y. 2010) (quoting *In re Adelphia Communication Corp.*, 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006)). Accordingly, the standard for appointment of a Chapter 11 trustee under section 1104(a)(2) is flexible.

43.    Ceding possession and control to a trustee protects the interests of creditors (Romspen) and the bankruptcy estate. The Debtor has been displaced for more than two years; returning control over and possession of the Property to the Debtor threatens the interests of

interested parties – including tenants, neighbors, and the community – from the type of mismanagement that diminished the Property under the Debtor's earlier watch.

44.     Given his control over the Property during the last two-plus years, Romspen requests that the Receiver be afforded the opportunity to the extent the Court does appoint a trustee.  The Receiver has proven to be a capable officer of the New Mexico Court, and has deep familiarity with the Property, the cash flows, and the tenants.

**RESERVATION OF RIGHTS**

45.     Romspen expressly reserves all of its rights, including, without limitation, its right to supplement this Motion and/or to move for additional and further relief.

**CONCLUSION**

For these reasons, Romspen asks that this Court dismiss this case for cause, or, alternatively, to appoint a chapter 11 trustee; and grant such other and further relief as this Court deems just and proper.

DATED this 10th day of July 2025.

**BRYAN CAVE LEIGHTON PAISNER LLP**

   */s/Brigid K. Ndege*
Brigid K. Ndege (NY Bar No. 5046925)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:    (312) 602-5000
Facsimile:    (312) 602-5050
Email:    brigid.ndege@bclplaw.com

Kyle S. Hirsch (*Pro Hac Vice*)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:    (602) 364-7000
Facsimile:    (602) 364-7070
Email:    kyle.hirsch@bclplaw.com

**Counsel to Romspen Investment LP, as agent and servicer for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC**

617222597                                    15

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2025, I directed that a true and correct copy of this

document be served on any attorney who has appeared of record, through the Court's ECF

notification system, as follows:

- H. Bruce Bronson, Jr. on behalf of Debtor 1300 Desert Willow Road, LLC
  ecf@bronsonlaw.net
  bbronson@bronsonlaw.net;bronson.h.bruceb126820@notify.bestcase.com

- Rachael Siegel on behalf of U.S. Trustee United States Trustee
  rachael.e.siegel@usdoj.gov United States Trustee
  USTPRegion02.NYECF@USDOJ.GOV

The following parties received notice via first class mail:

- Equity Funding, LLC, Derek Edmonds, 11245 SE 6th Street, Suite 280, Bellevue, WA 98004-6594
- Fund Investment 149, LLC, c/o Bloomfeld Capital Partners, LLC, 700 Forest Avenue, Birmingham, MI 48009-6444
- Mark Calvert, Receiver, Cascade Capital, 1100 Bellevue Way NE Suite 8A-400, Bellevue, WA 98004-4280
- Meltzer, Lippe, Goldstein & Breitstone, Gary Meltzer, 190 Willis Avenue, Mineola, NY 11501-2643
- NM Industrial Park, LLC, 150 E 78th Street,, New York, NY 10075-0413

DATED this 10th day of July 2025.        **BRYAN CAVE LEIGHTON PAISNER LLP**

　_/s/ Brigid K. Ndege_
Brigid K. Ndege (NY Bar No. 5046925)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:      (312) 602-5000
Facsimile:      (312) 602-5050
Email:          brigid.ndege@bclplaw.com

*Counsel to Romspen Investment LP, as agent and servicer for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC*