Hearing Date and Time: July 23, 2025 at 2:00 p.m.

Brigid K. Ndege (NY Bar No. 5046925)
**BRYAN CAVE LEIGHTON PAISNER LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone:     (312) 602-5000
Facsimile:     (312) 602-5050
Email:         brigid.ndege@bclplaw.com

Jarret P. Hitchings (Admitted *Pro Hac Vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:     (704) 749-8965
Facsimile:     (704) 749-8990
Email: jarret.hitchings@bclplaw.com

Kyle S. Hirsch (Admitted *Pro Hac Vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:     (602) 364-7000
Facsimile:     (602) 364-7070
Email:         kyle.hirsch@bclplaw.com

*Counsel to Romspen Investment LP, as agent and servicer for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

| | |
|---|---|
| **In re:**<br><br>**1300 Desert Willow Road, LLC,**<br><br>                      **Debtor.** | **Chapter 11**<br><br>**Case No. 25-11375 (PB)** |

**OBJECTION TO DEBTOR'S EMERGENCY MOTION**
**FOR AUTHORITY TO USE CASH COLLATERAL AND RESERVATION OF RIGHTS**

Secured creditor Romspen Investment LP ("Romspen Investment"), as agent and servicer for TIG Romspen US Master Mortgage LP ("TIG") and Fund Investment 149, LLC ("Fund Investment," collectively with TIG and Fund Investment, "Romspen"), hereby submits this objection and reservation of rights (the "Objection") to *Debtor's Motion for an Order (A) Authorizing the Use of Cash Collateral Pursuant to Bankruptcy Code Section 363(c)(2) and*

1

*Bankruptcy Rules 4001 on an Interim Basis and Providing Adequate Protection Therefor Pursuant to 11U.S.C. §§361 and 362, (B) Scheduling a Final Hearing; and Such Other and Further Relief as the Court Finds Just and Proper* [ECF No. 16] (the "Motion") filed on an emergency basis by the above-captioned debtor, 1300 Desert Willow Road, LLC (the "Debtor").  In support, Romspen incorporates the Declaration of Scott Mestrezat in support of Motion to Dismiss Debtor's Chapter 11 Case, or, Alternatively, Appoint a Chapter 11 Trustee [ECF No. 13] and, in addition, respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Court should deny the Debtor's emergency request to use cash collateral. As an initial matter, despite filing this bankruptcy case over a month ago the Debtor created a self-induced emergency and waited until after Romspen sought to dismiss its bankruptcy case to seek expedited emergency relief.

2. Notwithstanding this belated request, the Debtor has not established that Romspen's undisputed interests in the Debtor's Property and its proceeds would be adequately protected if the Debtor were permitted use of cash collateral. Instead, the Debtor has made a number of unpersuasive assertions that lack evidentiary support. First, the Debtor asserts that its use of cash collateral to pay ordinary expenses and maintain the value of the business as an ongoing enterprise provides sufficient adequate protection to Romspen. Motion at 9, para. 33. It does not; indeed, this Court has rejected the argument that a debtor can use payment of necessary expenses as evidence of adequate protection. Second, the Motion states that the Debtor will receive replacement liens as adequate protection. With respect to rents, the protection afforded by so-called "replacement liens" is illusory and thus are insufficient to adequately protect Romspen's interests. Finally, the Debtor suggests that because the Property's value exceeds the

indebtedness owed by the Debtor Romspen is protected by an adequate equity cushion.[1] Tellingly, however, the Motion fails to provide *any* support to establish this valuation.

## RELEVANT BACKGROUND[2]

**A. Romspen's Undisputed Interest in Cash Collateral**

3.     As of June 1, 2025, the Debtor's total outstanding secured obligations to Romspen exceed $26,393,983.03 in unpaid principal, accrued and unpaid interest, and incurred unpaid loan fees, plus all applicable prepetition fees, costs, expenses, and costs of collection (including, without limitation, reasonable attorneys', financial advisors' and other professionals' fees and expenses), plus any and all other amounts required to be paid under and in connection with the loan Romspen made to the Debtor in the original principal amount of $20,100,000.00 (the "Loan").

4.     The Loan is evidenced by, among other things: (i) that certain Loan Agreement dated April 4, 2022, between Romspen and the Debtor (as amended, modified, and/or restated from time to time, the "Loan Agreement") and (ii) that certain Promissory Note, dated April 4, 2022, in the principal sum of $20,100,000.00, executed by Debtor on March 29, 2022 (the "Initial Note" and as amended, modified, and/or restated from time to time, the "Note").

5.     To secure the Debtor's payment and performance obligations under the Loan, the Debtor granted Romspen, among other things: (i) a senior-priority lien and security interest in and to that certain real property located at 1300 Desert Willow Road, Los Lunas, New Mexico and all buildings, improvements, tenants and all personal property necessary for the operation

---

[1]     Despite valuing the Property at $40,000,000.00 in its petition, the Debtor in the Motion asserts without any evidence that the Property's value is $50,000,000.00. Motion at 2, para. 2.

[2]     Romspen hereby incorporates by reference the factual background, evidence and arguments set forth in Romspen's *Motion to Dismiss Debtor's Chapter 11 Case, or Alternatively, Appoint a Chapter 11 Trustee* [ECF No. 12] and the *Declaration of Scott Mestrezat in Support of Motion to Dismiss Debtor's Chapter 11 Case, or Alternatively, Appoint a Chapter 11 Trustee* [ECF No. 13].

3

thereof (the "Property") as set forth in that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing, given by the Debtor in favor of Romspen as beneficiary, recorded as Instrument No. 202204650 in the Valencia County, New Mexico Real Property Records (the "Deed of Trust"); (ii) that certain Assignment of Leases and Rents dated as of April 4, 2022, given by the Debtor in favor of Romspen and recorded at Instrument No. 202204651 in the Valencia County, New Mexico Real Property Records (the "Assignment of Rents"); and (iii) that certain Security Agreement dated as of April 4, 2022, given by the Debtor in favor of Romspen (the "Security Agreement").

6. The Loan Agreement, the Note, the Deed of Trust, the Assignment of Rents, and the Security Agreement, along with all other documents evidencing and/or securing the Loan, are referred to herein as the "Loan Documents."

7. Romspen asserts that the value of the Property, as of the Petition Date, is only slightly higher than the amount of the outstanding indebtedness.

**B. The Bankruptcy Case**

8. On June 22, 2025, (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[3] admitting in Paragraph 7 of its Petition that it filed as a single asset real estate debtor.[4]

9. The Debtor also admits that Romspen is the only creditor whose claim is secured by the Property. ECF No. 1, Schedule D, para. 2.1. In addition, the initially Debtor asserted that

---

[3]  The use of sections herein shall refer to the Bankruptcy Code, except as otherwise specified.

[4]  The Debtor failed to file a corporate resolution authorizing the bankruptcy filing in accordance with S.D.N.Y. LBR 1074-1(a); the affidavit required by S.D.N.Y. LBR 1007-2; or the corporate ownership statement, all of which were due at the time of filing. The Debtor was put on notice of these deficiencies but has yet to correct them. The Debtor's deadline to correct these deficiencies, as set forth on the case docket, was July 7, 2025,

4

the value of the Property was $40,000,000.00 (which Romspen contests). *Id.*, Schedule D, para 2.1. However, the Debtor later asserted in the Motion that the value of the Property is approximately $50,000,000.00. Motion at 2, para 2.

10.    Soon after the Petition Date, on June 25, 2025, Romspen filed its *Notice of Perfection of Lien Interest and Non-Consent to Use of Cash Collateral* [ECF No. 7] requesting that the Debtor sequester all cash collateral and stating that it did not consent to the use of cash collateral without a written agreement that would be subject to court approval. No written agreement or other consent has been reached.

11.    On July 10, 2025, Romspen filed its *Motion to Dismiss Debtor's Chapter 11 Case or, Alternatively, Appoint a Chapter 11 Trustee* [ECF No. 12] (the "Romspen Dismissal Motion"), which is currently pending and scheduled for a hearing on August 12, 2025 at 2:00 p.m.

12.    Soon thereafter, on July 18, 2025, the Debtor filed the instant Motion, seeking court authority to use Romspen's cash collateral to fund its chapter 11 case.

**OBJECTION**

13.    This Court should deny the Debtor's request for authority to use cash collateral, including on an interim basis, because the Debtor has failed to meet (and in fact cannot meet) its burden to establish that Romspen's interest in the Property or Cash Collateral is adequately protected.

14.    Section 363 provides that a debtor-in-possession may not utilize cash collateral unless the creditor holding an interest in such cash collateral consents or, after notice and a hearing, the court finds that the secured creditor's interest in the cash collateral is adequately protected. 11 U.S.C. § 363(c) and (e); *see also Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section

5

363(e) is not permissive or discretionary – it states that the court 'shall' grant the relief specified, at any time, on request of the secured entity"). The Debtor bears the burden of proof that a lender is adequately protected. *In re South Side House, LLC*, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012); *see also In re O.P. Held, Inc.*, 74 B.R. at 784 (noting that a debtor requesting authorization for use of cash collateral "must prove by clear and convincing evidence that the secured creditor will realize the value of its bargain in light of all the facts and circumstances of the case") (citations omitted).

15. Section 361 provides that adequate protection can take the form of, among other things, periodic cash payments, additional or replacement liens, or such other relief as will provide the "indubitable equivalent" of the secured creditor's interest in the collateral. 11 U.S.C. § 361. The Bankruptcy Code does not limit adequate protection to these enumerated examples, and courts have the authority to fashion adequate protection as they deem appropriate under the circumstances. *In re O.P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987).

16. The Debtor asserts that Romspen's interests are adequately protected because the Debtor will use the cash collateral to pay expenses that the Debtor alleges are actual and necessary to maintain the Property. According to the Debtor, adequate protection may be demonstrated by a showing that the use of cash collateral will maintain the going concern value of a debtor's business or that the value of the debtor's collateral is preserved by the debtor's continued operations.

17. The Debtor is mistaken. As an initial matter, when courts consider "adequate protection for the use of rents, courts recognize that Section 552(b) creates a security interest in post-petition rental income that is separate and distinct from the creditor's security interest in the property securing the mortgage." *In re South Side House, LLC*, 474 B.R. 391, 408 (Bankr. E.D.N.Y. 2012) (citation omitted). "As a result, a creditor 'is entitled to adequate protection of two distinct

6

interests: its mortgage on the property and its right to collect the rents flowing from the property or, at the very least, its security interest in such rents.'" *Id.* (citation omitted).

18. Because of this, courts have rejected the idea that a secured lender, with a security interest in rents, has that interest adequately protected by the use of its cash collateral for maintenance. For example, the debtors in *In re Broadway Realty I Co., LLC*, No. 25-11050 (DSJ), 2025 Bankr. LEXIS 1550 (Bankr. S.D.N.Y. June 29, 2025) made arguments similar to the Debtor in this case. These debtors argued that their use of cash collateral to pay expenses should not trigger adequate protection payments or that these payments constituted adequate protection payments because the contemplated expenditures were eligible for surcharge under Section 506(c). *Id*. at *17-18. The debtors also argued that their expenditures would increase the value of debtors' properties by preserving them as going concerns, such that the payments were permissible surcharges under Section 506(c) and should be credited as adequate protection payments or deemed not to require separate adequate protection. *Id*. at *17-18.[5]

19. The court ruled against these debtors and found that a "benefit to the secured creditor must be shown in the quantitative, [and] not a[ny] qualitative or generalized, sense.[ . . .]" *Id.* at *20-21 (Bankr. S.D.N.Y. June 29, 2025). The court further found that a "secured creditor cannot be required to bear the expenses which benefit the entire estate under the theory that the expenses were incurred to preserve the assets of the estate as a whole." *Id.*

20. In another case, *Travelers Ins. Co. v. River Oaks Ltd. P'ship (In re River Oaks Ltd. P'ship)*, 166 B.R. 94, 98-99 (E.D. Mich. 1994), the court noted "The determination as to whether

---

[5] Section 506(c) provides: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property." 11 U.S.C. § 506(c).

a creditor is adequately protected pursuant to § 363 should be determined based on factors such as whether the value of the security exceeds the debt; or whether there is a reorganization plan that provides for 'full payment' to the creditor[ . . .] The Court does not believe the mere fact that the rental income is used to pay the necessary expenses of operating and maintaining the property or that the property is adequately maintained and not depreciating, in and of itself, provides the adequate protection required under § 363 for the security interest covered by the assignment of rents."(citations omitted).

21. Finally, this Debtor also offered adequate protection liens as adequate protection. However, with respect to the adequate protection liens intended to protect against the use of assigned rents, such liens are illusory. *See Putnal v. Suntrust Bank,* 489 B.R. 285 (Bankr. M.D. Ga. Mar. 28, 2013) ("a replacement lien simply provides no protection for the very real interest the creditor has in accruing rents.").

22. The Debtor' final argument is that adequate protection is not necessary because the Property is each currently worth significantly more than the debt Debtor owes Romspen, creating a significant equity cushion. An equity cushion is, by definition, a "speculative [and] uncertain" form of adequate protection and "can evaporate entirely, if not substantially diminish over time, especially in a soft or declining real estate market." *In re Stoecker*, 114 B.R. 980, 986 (Bankr. N.D. Ill. 1990). Despite this, however, the Debtor fails to provide any supporting documentation to satisfy its burden of proof. For instance, the Debtor states that the Property is worth $50,000,000.00 but has failed to provide a valuation to support this finding. In addition, this valuation contradicts the Debtor's valuation in the Petition.

23. Again, the debtors in *Broadway Realty* made similar arguments. The Debtors argued that the properties in their bankruptcy cases were worth significantly more than the debt

that encumbered them and that this equity cushion served as adequate protection. *Id.* at 20-21. The court found this argument unpersuasive, noting that a large equity cushion would benefit general unsecured creditors or other low-priority claimants rather than the secured creditor. As the court explained, the secured creditor's security would be protected to the extent that a robust enough equity cushion already existed. *Id*. The court further explained that "benefit to the secured creditor" must be showed in a quantitative not in any qualitative or generalized sense. *Id.*

## **RESERVATION OF RIGHTS**

24.    Romspen expressly reserves all of its rights, including, without limitation, its right to supplement this Objection and/or to move for additional and further relief. In particular, nothing in this Objection or any accommodation or other agreement with respect to the Motion or any relief sought therein shall be deemed or construed as a waiver of any rights, claims, arguments, or other entitlement to relief requested in or asserted by the Romspen Dismissal Motion, each and all of which being specifically reserved.

## CONCLUSION

The Debtor has failed to carry its significant burden of establishing that Romspen is adequately protected in light of the proposed use of its cash collateral to fund these cases. For all these reasons and such others that Romspen may assert at any hearing, the Court should deny the Motion and grant such other and further relief as this Court deems just.

DATED this 22nd day of July, 2025.

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/    Brigid K. Ndege*
 Brigid K. Ndege (NY Bar No. 5046925)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
Telephone:    312.602.5104
Facsimile:    (312) 602-5050
Email:    brigid.ndege@bclplaw.com

Kyle S. Hirsch (*Pro Hac Vice*)
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004
Telephone:    (602) 364-7000
Facsimile:    (602) 364-7070
Email:    kyle.hirsch@bclplaw.com

Jarret P. Hitchings (Admitted *Pro Hac Vice*)
301 S. College Street, Suite 2150
Charlotte, NC 28202
Telephone:    (704) 749-8965
Facsimile:    (704) 749-8990
Email:    jarret.hitchings@bclplaw.com

***Attorneys for Romspen Investment LP, as agent and service for TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC***

# CERTIFICATE OF SERVICE

I hereby certify that on July 22nd 2025, I directed that a true and correct copy of this document be served on any attorney who has appeared of record, through the Court's ECF notification system, as follows:

- H. Bruce Bronson, Jr. on behalf of Debtor 1300 Desert Willow Road, LLC ecf@bronsonlaw.net bbronson@bronsonlaw.net; bronson.h.bruceb126820@notify.bestcase.com

- Rachael Siegel on behalf of U.S. Trustee United States Trustee rachael.e.siegel@usdoj.gov United States Trustee USTPRegion02.NYECF@USDOJ.GOV

The following parties received notice via first class mail:

- Equity Funding, LLC, Derek Edmonds, 11245 SE 6th Street, Suite 280, Bellevue, WA 98004-6594

- Fund Investment 149, LLC, c/o Bloomfeld Capital Partners, LLC, 700 Forest Avenue, Birmingham, MI 48009-6444

- Mark Calvert, Receiver, Cascade Capital, 1100 Bellevue Way NE Suite 8A-400, Bellevue, WA 98004-4280

- Meltzer, Lippe, Goldstein & Breitstone, Gary Meltzer, 190 Willis Avenue, Mineola, NY 11501-2643

- NM Industrial Park, LLC, 150 E 78th Street,, New York, NY 10075-0413

**BRYAN CAVE LEIGHTON PAISNER LLP**

*/s/    Brigid K. Ndege*
Brigid K. Ndege (NY Bar No. 5046925)
161 North Clark Street, Suite 4300
Chicago, Illinois 60601-3315
Telephone: 312.602.5104
Email: brigid.ndege@bclplaw.com