BRONSON LAW OFFFICES, P.C.
*Counsel for the Debtor*
480 Mamaroneck Ave.
Harrison, NY 10528
(914) 269-2530 (Tel.)
888-908-6906 (Fax)
hbbronson@bronsonlaw.net
H. Bruce Bronson, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
In re:

     1300 Desert Willow Road, LLC,

                    Debtor.

----------------------------------------------------------------X

Case No.: 25-11375 (PB)

Chapter 11

## <u>DISCLOSURE STATEMENT</u>

      1300 Desert Willow Road, LLC, debtor and debtor-in-possession (the "**<u>Debtor</u>**") hereby submits this disclosure statement (the "**<u>Disclosure Statement</u>**"), pursuant to Section 1125 of Title 11 of the United States Code (the "**<u>Bankruptcy Code</u>**"), in connection with approval and confirmation of the Debtor's accompanying Plan of Reorganization of even date (the "**<u>Plan</u>**"). The Plan is attached hereto as "**<u>Exhibit A</u>**". Unless otherwise defined, all capitalized terms contained in the Plan shall have the same meaning for purposes of this Disclosure Statement. The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "**<u>Bankruptcy Court</u>**"). [By Order of the Bankruptcy Court, the Bankruptcy Court approved this Disclosure Statement as containing "adequate information" under Section 1125(f) of the Code, subject to the right of parties in interest to object to the adequacy of such Disclosure Statement at the hearing for final approval as described below.]

      Accompanying this Disclosure Statement are copies of the following documents (Exhibits A, B, C, D and E):

**A. The Plan;**
**B. Liquidation Analysis of the Debtor;**
**C. Financial Projection of the Debtor's Operations;**
**D. Appraisal; and**
**E. A Ballot for those entities entitled to vote to accept or reject the Plan**

## PLAN SUMMARY

The Plan is designed as a mechanism for the reorganization of Debtor. The Debtor is a single asset real estate company that owns the property at 1300 Desert Willow Road, Los Lunas, New Mexico 87031 (the "**Property**"). The Property is located in the 500-acre Los Morros Business Park [1] and is a good quality concrete tilt-up industrial manufacturing property totaling 360,902 SF of NRA located on a 49.99-acre site. The Property currently has one tenant and a lease about to be signed by a second tenant. Pursuant to the Plan, there will be four classes of creditors as follows:

**Class 1**: consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Class 2**: consists of all Allowed Secured Claims.

**Class 3**: consists of the Allowed Unsecured Claims (the "**General Unsecured Claims**").

**Class 4:** consists of the Equity Interests.

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the foregoing Classes and are treated separately.

## THE CONFIRMATION PROCESS

**The Confirmation Hearing Date. Hearing on Final Approval of the Disclosure Statement.**

Pursuant to Sections 1125 and 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider the Debtor's request for (a) final approval of the Disclosure Statement and (b) Confirmation of the Plan on ******, at 10:00 a.m. prevailing New York time,

---

[1] Within the Los Morrows Business Park there is a 660,000 SF Walmart Distribution Center and a 460,000 SF Facebook data center.

before the Honorable Philip Bentley, One Bowling Green, New York, NY 10004 (the "**Confirmation Hearing Date**"). The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served with a copy to the Court's chambers so as to be received on or before seven days prior to the Confirmation Hearing Date in the manner described below under "Requirements for Confirmation."

On the Confirmation Hearing Date, the Bankruptcy Court will determine whether the requirements of the Bankruptcy Code for Confirmation have been satisfied. The Debtor believes that the Plan satisfies all applicable requirements of Section 1129(a) of the Bankruptcy Code.

### The Purpose of this Disclosure Statement

This Disclosure Statement and the accompanying ballot (for those entities entitled to vote on the Plan) are being furnished to the Debtor's known creditors pursuant to Section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Chapter 11 Plan. The Plan is incorporated herein by reference. It is intended to provide adequate information as such term is used in Section 1125 of the Bankruptcy Code to enable holders of claims or interests to make an informed decision whether to accept or reject the Plan.

**The Debtor recommends that all parties entitled to vote on the Plan accept the Plan. Without acceptance of the Plan by the requisite votes, the Debtor is likely to be converted to Chapter 7 and liquidated with little or no distribution to the unsecured creditors.**

### DISCLAIMER

**NO PERSON MAY BE GIVEN ANY INFORMATION OR MAKE ANY REPRESENTATIONS NOT CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THAT DATE. ALL CREDITORS SHOULD READ CAREFULLY AND CONSIDER FULLY THE DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS THE EQUIVALENT OF A STATEMENT MADE IN FURTHERANCE OF SETTLEMENT NEGOTIATIONS.**

**THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND FINANCIAL INFORMATION.**

**ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED DOCUMENT SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED FROM THE DEBTOR'S BOOKS AND RECORDS AND PUBLIC PLEADINGS. ALTHOUGH DILIGENT EFFORTS HAVE BEEN MADE TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION IS WITHOUT SOME INACCURACY OR OMISSION.**

**THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.**

**THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR IS BASED UPON AN ESTIMATION OF SUCH VALUE. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL AND TAX ADVISORS IF YOU HAVE ANY QUESTIONS OR CONCERNS REGARDING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.**

**THE DISCLOSURE STATEMENT ORDER, A COPY OF WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT, SPECIFIES THE DEADLINES, PROCEDURES, AND INSTRUCTIONS FOR VOTING TO ACCEPT OR REJECT THE PLAN AND FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN. A FORM BALLOT FOR VOTING ON THE ACCEPTANCE OR REJECTION OF THE PLAN IS ALSO PROVIDED HEREWITH TO EACH HOLDER ENTITLED TO VOTE. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD READ THE DISCLOSURE STATEMENT, THE PLAN AND THE DISCLOSURE STATEMENT ORDER IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.**

### Voting Instructions

**Generally.**  The Debtor has sent a ballot with voting instructions to all creditors entitled to vote to accept or reject the Plan, along with a copy of the Plan and a copy of this Disclosure Statement, which has also been sent to all known creditors. Creditors entitled to vote should read the ballot carefully before completing and returning the ballot to the undersigned counsel by the date and in the manner described in the instructions. See "**Exhibit E**"-**Sample Ballot**.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on all creditors if accepted by creditors that are the holders of two-thirds in amount and more than one-half in number of Allowed Claims in each Impaired Class who actually vote on the Plan, if any. In the event the requisite acceptances are not obtained, and as explained in more detail below, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the Class rejecting it and (ii) at least one impaired Class has accepted the Plan determined without considering the acceptances of any insider, and the Plan otherwise satisfies the requirements of Section 1129(a) of the Code.

**As the preceding paragraph makes evident, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan. YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT. Creditors should exercise their right to vote to accept or reject the Plan if they are entitled to vote.**

**Deadline for Returning Ballots.**  The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be completed, signed and received by counsel for the Debtor no later than **seven** days before the Confirmation Hearing Date ******* at 5:00 p.m. at the following address, or by fax or email:

Bronson Law Offices, P.C.
480 Mamaroneck Ave.
Harrison, NY 10528
*Attn: H. Bruce Bronson*

(888) 908-6906 (fax)
hbbronson@bronsonlaw.net

Please ask for confirmation that your ballot was received whether you fax or email it.

**Voting Questions.** If you have any questions regarding the provisions or requirements for voting to accept or reject the Plan or require assistance in completing your Ballot, you may contact Debtor's counsel, H. Bruce Bronson, Esq. at 914-269-2530, or by email at hbbronson@bronsonlaw.net. Please be sure to reference 1300 Desert Willow Road, LLP in all communications.

## <u>INTRODUCTION</u>

The Debtor was formed as a limited liability company on January 27, 2021, for the purpose of acquiring and owning the Property. The Property was purchased by the Debtor on date? The Debtor is owned 100% by Corniche Sry LLC (the "**Equity Interest Holder**") of which David Ebrahimzadeh, is the 100% owner (the "**Beneficial Owner**").   The site area of the Property is comprised of the following: primary site area-22.94 acres, unusable land (pond area)-6.17 acres, excess land-9.92 acres and surplus land-10.97 acres. The Property is situated at interstate 25 and Highway 6 (Main Street). The Property has 367 parking spaces, a loading dock and approximately 24,206 SF of office-build-out. The Property has a multi-tenant design that is currently 44.1% occupied, with a lease for the additional space pending.  The existing tenant, Niagara Bottling, occupies suite B containing 159,265 SF. Suite A has 201,637 SF and a lease agreement is about to be executed at $10 per square foot.

The Debtor began having financial difficulty when a group of short term tenants left the Property in unison. The principal of Debtor carried the costs of the Property for a period of time, but around October of 2023 could no longer make the full payment to its secured lender Romspen

Investment LP, as Agent and Servicer for Lenders TIG Romspen US Master Mortgage LP and Fund Investment 149, LLC ("**Romspen**" or "**Secured Lender**").

The Romspen loan was in the original amount of $20,100,000 bearing interest at 11.25%, with default interest being an additional 6.75%. Based on the Romspen proof of claim $4,956,039 is default interest, $988,441.69 is interest at the non-default rate and approximately $587,000 is legal fees, late fees and forbearance fees. Romspen filed a proof of claim in the total amount of $26,633,749.15.

Additionally, the unsecured creditor group, Equity Funding LLC ("**Equity Funding**") loaned up to $18,000,000 to the Debtor, for the purpose of operating the Property (the "**Equity Funding Unsecured Loan**"). The Equity Funding Unsecured Loan has been negotiated with the Debtor and Equity Funding has agreed to receive no payment for the period of one year after the Effective Date, and thereafter an amount to the extent of net profits from rent. The Equity Funding Unsecured Loan will bear interest at the rate of 3% per annum and will be paid in full upon the sale of the Property or major refinancing or other disposition of the Property or Debtor, as an accommodation to Debtor to assist it in selling or refinancing. Equity Funding has stated that it would file a proof of claim prior to the bar date in the amount of approximately $18,000,000 as funds it has advanced to the Debtor.

## SIGNIFICANT EVENTS DURING CHAPTER 11 CASE

On June 22, 2025, the Debtor filed a chapter 11 petition (the "**Petition Date**").

By order of the Court the bar date is set for October 20, 2025, with the government bar date being 180 days after the Petition Date [ECF Dkt. No. 64]. In addition, counsel was retained which the Court approved on September 15, 2025 [ECF Dkt. No.:63].

A property manager was hired and approved on an interim basis by the Court on July 21, 2025 [ECF Dkt. No. 34]; and approved on a final basis on August 22, 2025 [ECF Dkt. No. 53].

An interim cash collateral order was signed by the Court on August 4, 2025 [ECF Dkt. No. 35] with a second interim cash collateral order signed by the Court on August 22, 2025 [ECF Dkt. No. 50]. A hearing regarding the final cash collateral order is set for September 26, 2025.

The Secured Lender filed a motion to dismiss the case, which was denied on August 22, 2025, by Court order [ECF Dkt. No. 51].

The Secured Lender also filed a motion for relief from the stay which motion is to be heard on August 26, 2025.

## DEBTOR'S BUSINESS AFTER REORGANIZATION

Debtor expects by September 22, 2025, to have in hand a new lease for the unoccupied portion of the Property from a tenant who is financially sound. The revenue that will be generated each month will be sufficient to fund the payment of a loan that would refinance the Romspen loan. See **Exhibit C-Financial Projections of the Debtor's Operations**.

In the event that the Debtor cannot refinance the Romspen loan within 6 months of the Effective Date, the Debtor will market and sell the Property and repay the Romspen loan.

Debtor expects to continue to employ the property manager to operate the Property.

## APPRAISAL

Debtor has obtained an appraisal from Colliers that values the Property as is at $39,400,000, plus the value of excess land and surplus land at $5,850,000. The value of the Property, based on the appraisal, after the new lease is signed is $44,500,000 plus the excess land and surplus land value of $5,850,000. The Appraisal is attached hereto as **Exhibit D-Appraisal**.

Debtor contends that the value of the Property is sufficient to support either the refinancing or the sale of the Property.

## DEBTOR IN POSSESSION LOAN

The Debtor has a verbal commitment from Equity Funding which will be reduced to

writing in the next week to provide debtor-in-possession financing in order to pay the broker who obtained the new tenant. The financing would prime the Secured Lender and have a super priority lien on the Property. The fee, which is market rate, is approximately $800,000 with half due upon execution of the lease (subject to Bankruptcy Court approval) and the other half due upon the first payment of rent. There are 30 days' free rent in the beginning of the lease and accordingly, the second installment of the broker fee is not due until that time. Alternatively, the Debtor will pay the broker from cash on hand that is cash collateral and will use the first months rent to pay the balance owed to the broker.

## PLAN SUMMARY

### UNCLASSIFIED ADMINISTRATIVE EXPENSE
### CLAIMS, PRIORITY TAX CLAIMS AND U.S. TRUSTEE FEES

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims or Priority Tax Claims, or amounts owed to the U.S. Trustee's office, which shall be afforded the following treatment:

1. **Administrative Expense Claims**. All Allowed Administrative Expense Claims shall be paid on the later of the Effective Date, or entry of an order of the Bankruptcy Court allowing the same, unless otherwise agreed upon by the parties or in the ordinary course. The primary Administrative Expense Claims consist of (1) professional fees and expenses for the Debtor's general bankruptcy counsel, Bronson Law Offices, P.C. which are only to be paid pursuant to approved fee applications upon notice and hearing; and (2) real estate counsel who has provided legal services regarding the new lease for Unit A.

2. **Priority Tax Claims.** Priority Tax Claims of governmental units are required to be paid over a period commencing on the Effective Date and ending on the date that is five (5)

years from the Petition Date, in equal monthly installments as provided in their respective proofs of claim. There are no known priority claims; however, if there were those claims would be paid upon the Effective Date.

3. **U.S. Trustee Fees**. Any unpaid U.S. Trustee Fees and any applicable interest thereon shall be paid on the Effective Date, or immediately thereafter.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

1. **Class 1-Allowed Priority Claims.** Class 1 consists of all Allowed Priority Claims, other than Priority Tax Claims.

**Treatment**-The Allowed Priority Claims, if any, shall be paid in full in Cash on the Effective Date. The Debtor knows of no Allowed Priority Claims.

**Right to Vote**. Class 1 is not Impaired under the Plan and, pursuant to Section 1126(f) of the Bankruptcy Code, is not entitled to vote to accept or reject the Plan.

2. **Class 2-Allowed Secured Claims.** There is one known secured claim in the claimed amount of $26,633,749.15, consisting of the following based on the filed proof of claim (POC # 1):

| Romspen Proof of Claim (POC 1) | | |
|---|---|---|
| | | |
| Principal Balance | $ | 20,100,000.00 |
| Interest Due @ Note Rate 11.25% to and including 6/22/2025 | $ | 988,441.69 |
| Additional default interest Due @ 6.75%to and including 6/22/2025 | $ | 4,956,039.14 |
| Late Fees @ 5% on note rate interest | $ | 338,554.51 |
| Default Late fee 0.5% of balance | $ | 100,500.00 |
| Forbearance Fee (3rd Amendment to 2nd FB) | $ | 50,000.00 |
| Forbearance Fee (4th Amendment to 2nd FB) | $ | 50,000.00 |
| Outstanding Legal Fees-Modrall Sperling | $ | 12,330.88 |
| Outstanding Legal Fees-Foley | $ | 750.00 |
| Outstanding Legal Fees-Bryan Cave Leighton Paisner LLP | $ | 36,082.93 |
| Statement Fee (x3) | $ | 1,050.00 |
| | $ | 26,633,749.15 |

Debtor will challenge the proof of claim to the extent of payments not credited, default interest, late fees, forbearance fees, legal fees and statement fees which Debtor contends are incorrect, not allowed by law, were incorrectly calculated, are unreasonable or are in the nature of a penalty. See eg. *In re Campbell*, 513 B.R. 846 (Bankr. S.D.N.Y. 2014)**,** *Affirmed* by *3939 WPR Funding LLC v. Campbell (In re Campbell)*, 2015 U.S. Dist. LEXIS 129992 (S.D.N.Y., Sept. 28, 2015).

**Treatment-Class 2.** The claim of Romspen to the extent it is an Allowed Secured Claim shall be paid as follows:

- The principal portion of the loan ($20,100,000) will be amortized and paid monthly over 20 years bearing interest at the rate of 6.99% or $155,714.46 per month.

- The interest, late fees, forbearance fees, default fees, legal fees and statement fee of $6,533,749, to the extent allowable shall be payable without interest over 20 years in the monthly amount of $27,223.95.

**Right to vote.** Class 2-Secured Claims are Impaired and entitled to vote to accept or reject the Plan.

3. **Class 3-Unsecured Claims-**The Class 3 Unsecured Claims consist of all unsecured creditors as set forth below.

**Treatment-Class 3.** The Allowed Class 3 Claims shall be paid as set forth in the chart below.

**Right to vote.** Class 3-Unsecured Claims are Impaired and are entitled to vote to accept or reject a Plan.

Class 3 claims consist of the following:

| Claimant | POC or Petition No. | Amount Claimed | Amount of Allowed Unsecured Claim | Claim Allowed? |
|---|---|---|---|---|
| Equity Funding, LLC c/o Derek Edmonds 11245 SE 6th Street Bellevue, WA 98004 | Petition 3.2 in the amount of $5,000,000. POC to be filed for the balance. | $18,000,000 | $18,000,000 | Yes, to be paid pursuant to agreement. No interest for one year from the Effective Date and then from net proceeds of rents, if any. To be paid in full with interest at the rate of 3% per annum upon a sale, major refinancing or other disposition of the Property or interests in the Debtor. |

| Meltzer, Lippe, Goldstein & Breitstone c/o Gary Meltzer 190 Willis Avenue Mineola, NY 11501 | 3.2 | $50,000 | $50,000 | Yes, to be paid on the Effective Date. |
|---|---|---|---|---|

**Class 4-Equity Interests**. Class 4 consists of the Equity Interest of the limited liability owners of Debtor, as set forth in the Petition.

**Treatment**-On the Effective Date, the class 4 Equity Interest shall contribute amounts paid by the Equity Interest Holder to fund the bankruptcy in an amount equal to not less than $50,000, as new value and will retain its 100 % equity interest.

**Right to Vote.** The holders of the Class 4 Interests under this Plan are not entitled to vote to accept or reject the Plan.

## IMPLEMENTATION OF THE PLAN

On the Effective Date the Debtor will pay from funds on hand (1)  all Allowed Administrative Expenses, unless there is agreement to a different treatment; and (2) make the first payment to Romspen as set forth above.

Professional fees for services rendered by the Debtor's attorneys subsequent to the Effective Date in connection with the Plan or the Debtor's Chapter 11 case, and reimbursement of expenses relating to such services may be paid by the Debtor without prior court approval, to the extent that section 1123(a)(6) of the Code is applicable.

## PROVISIONS GOVERNING DISTRIBUTIONS

1. **Disbursements.** All distributions under the Plan shall be made by the Debtor/Reorganized Debtor.

2. **Rights and Powers of the Debtor and Reorganized Debtor.** The Debtor and Reorganized Debtor shall be empowered to (i) execute all agreements, instruments and other documents necessary to perform their duties under the Plan (ii) direct that all

-12-

distributions contemplated by the Plan be made, (iii) prosecute, settle and enforce any objections to Claims or causes of action on behalf of the estate, and (iv) exercise such other powers as may be deemed necessary and proper to implement the Plan.

3. **Claim Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, only the Debtor/Reorganized Debtor shall have standing to file and prosecute an objection to Claims. All such objections shall be filed and served no later than 90 days after the Effective Date of the Plan in accordance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

4. **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim until such Disputed Claim becomes an Allowed Claim by stipulation or order of the Bankruptcy Court. Instead, any monies that otherwise would be paid if a Disputed Claim were Allowed shall be held by Debtor/Reorganized Debtor until resolution at which time such withheld Cash shall be paid to the holder of such Allowed Claim.

5. **Undeliverable Distributions.** If a distribution to the holder of any Allowed Claim is returned or not cashed within 180 days of such distribution, no further distribution shall be made to such Claimant, unless, within such period, the Reorganized Debtor is provided with the Claimant's current address. Any undeliverable distribution shall revert to the Debtor/Reorganized Debtor. Debtor/Reorganized Debtor will use reasonable efforts to locate holders of Allowed Claims.

6. **Management of the Debtor.** After the Effective Date the Debtor will be controlled by the equity holder and its principal, Corniche Sry LLC and David Ebrahimzadeh.

<u>**MODIFICATION AND REVOCATION OF THE PLAN**</u>

The Plan may be altered, amended or modified by the Debtor at any time before the

substantial consummation of the Plan, as provided in §§ 1101(a) and to the extent permitted by 1127 of the Code and Bankruptcy Rule 3019, which authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

To the extent the Debtor is a party to an executory contract or unexpired lease which has not otherwise been assumed or rejected under Section 365 of the Bankruptcy Code prior to the Effective Date, the Confirmation Order shall constitute an Order authorizing the assumption or confirming the rejection of such executory contract or unexpired lease pursuant to Section 365 of the Code. In the event any lease is to be assumed that is not paid currently, Debtor will as a condition of assumption, cure the lease by making payment of the amounts owed or by entering into a stipulation or other agreement with creditor. Any party objecting to the assumption or cure amount shall have until ten days prior to the Confirmation Hearing Date to oppose such assumption or cure amount.

## RETENTION OF JURISDICTION

The Plan contains provisions providing for the retention of jurisdiction by the Bankruptcy Court to primarily enforce the Plan and implementation thereof through the sale of all of Debtor's property as well as to determine all other matters pending on the date of confirmation.

## REQUIREMENTS FOR CONFIRMATION

Notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction until the bankruptcy case is closed to perform the following actions:

(a) Ensure that the Plan is fully consummated;

(b) Resolve all matters arising under or relating to the Plan;

(c) Allow, disallow, determine, liquidate or classify, any secured or unsecured

claims;

(d) Grant or deny all applications for allowance of compensation and reimbursement of expenses by the professionals retained in the bankruptcy case;

(e) Resolve any motions or applications still pending prior to the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the provision of the Plan and all contracts, deeds, instruments made or created in furtherance of the Plan or to enforce all orders, judgments and rulings entered in connection with the bankruptcy case; and

(g) Enter a Final Decree concluding the bankruptcy case.

## OTHER PLAN REQUIREMENTS FOR CONFIRMATION

On the Confirmation Hearing Date in addition to reviewing the balloting (if any), the Bankruptcy Court will determine whether the requirements of Section 1129 of the Code have been satisfied, in which event the Bankruptcy Court will enter an order of Confirmation of the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payment made or promised in connection with the Plan, (v) the Plan is in the "best interest" of all creditors, in that it provides as good a recovery as a liquidation under Chapter 7 of the Bankruptcy Code, (vi) the Plan is feasible in that it is not likely to be followed by the further need for financial reorganization or liquidation and (vii) the Plan has been accepted by the requisite number and amount of creditors in each class entitled to vote on the Plan or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing Date.

**Best Interest Test**. The so-called "best interest" test requires that each impaired creditor either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive if the Debtor were to be liquidated under Chapter 7 of the Code.

Debtor contends that the Secured Creditor will receive at least as much under the Plan then if there was a liquidation. Under the liquidation analysis annexed hereto as **"Exhibit "B"** the creditors are receiving at least as much as they would have received in a hypothetical Chapter 7 case.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. Because of the new lease, Debtor believes that it will have sufficient revenue to meet the Debtor's cash needs and it is not likely that the Debtor will wind up back in bankruptcy. In fact, significant revenue is projected to be received by the Debtor. The Debtor's ability to refinance will be greatly enhanced as will its prospects to sell the Property if necessary.

**Acceptance by the Impaired Classes.** Under bankruptcy law, the Plan may be confirmed if each Impaired Class of Claims accepts the Plan. A Class is Impaired if the legal, equitable or contractual rights attaching to the claim of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in Cash. Classes 2 and 3 are Impaired and will be entitled to vote, to accept or reject the Plan. Because Class 4 will be cancelled, Class 4 is deemed to have rejected the Plan.

The Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of claims of that class who actually vote to accept or reject the Plan.

**Confirmation Without the Acceptance of Each Impaired Class.** In the event that all

impaired Classes do not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan under Section 1129(b) of the Bankruptcy Code at the Debtor's request if (i) all other requirements of Section 1129(a) of the Code are satisfied, (ii) at least one Impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its claims or equity interests. The Debtor believes that the Plan meets these tests.

## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### General

(a) The following is a summary of certain U.S. federal income tax consequences to the Debtor and to certain holders of Claims that are expected to result from implementation of the Plan. This discussion is based on the Internal Revenue Code, as amended, Treasury regulations in effect on the date of this Disclosure Statement and administrative and judicial interpretations thereof that are available on or before such date. All of the following is subject to change which change could apply retroactively and could affect the federal income tax consequences described below. There can be no assurance that the IRS will not take a contrary view to one or more of the issues discussed below. No ruling has been applied for or received from the IRS with respect to any of the tax aspects of the Plan and no opinion of counsel has been requested or

received by the Debtor with respect thereto. The following summary is for general information only and does not purport to address all of the U.S. federal income tax consequences that may be applicable to any particular holder of a Claim. The tax consequences to holders may vary based upon the individual circumstances of each holder.

(b) In addition, this discussion does not address any aspect of local, state or foreign taxation, or any estate or gift tax consequences of the Plan. The following assumes that the Plan will be implemented as described in the Plan and does not address the tax consequences if the Plan is not implemented.

THE TAX CONSEQUENCES OF THE PLAN ARE POTENTIALLY COMPLEX AND SUBJECT TO SIGNIFICANT UNCERTAINTIES. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH THEIR OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

### Tax Consequences to the Holders of Claims

(a) The federal income tax consequences of the Plan to a holder of a Claim will depend upon several factors, including but not limited to: (i) whether the holder's Claim (or a portion thereof) constitutes a Claim for principal or interest; (ii) the origin of the holder's Claim; (iii) the type of consideration received by the holder in exchange for the Claim;

(iv) whether the holder is a residence to the United States for tax purposes; (v) whether the holder has taken a bad-debt deduction or worthless-security deduction with respect to its Claim, and (vi) whether the holder receives distributions under the Plain in more than one taxable year.

(b) Generally, a holder of a Claim will recognize a gain or loss equal to the "amount realized" which is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a holder's Claim less its basis. The character of any recognized gain or loss (e.g., ordinary income or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in its hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim.

**HOLDERS OF CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

(c) Payors of interest, dividends and certain other reportable payments are generally required to withhold a percentage of such payments if the payee fails to furnish such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Post-Confirmation Debtor may be required to withhold a portion of any payments made to a holder of an Allowed Claim who does not provide its taxpayer identification number.

## <u>DISCHARGE OF DEBTS</u>

On the Confirmation date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent

specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in Section 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in Section 1141(d)(6)(B) of the Bankruptcy Code.

## INJUNCTION

**As of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, all entities shall be permanently, forever and completely stayed restrained prohibited, barred and enjoined from asserting against the Debtor or the Reorganized Debtor or its assets, property and estate, any other or further Claims, debts, obligations, rights, suits , judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing as of the Effective Date or thereafter arising, at law, in equity or otherwise relating to the Debtor or Reorganized Debtor or any of its assets, property and estate, based upon any act or omission, transaction, agreement, event, or other occurrence taking place or existing on or prior to the Effective Date.**

## PLAN AND CONFIRMATION ORDER AS RELEASE

From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense, in favor of the Debtor, to any Claim or liability released pursuant to **Article IX** of the Plan.

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence, and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Bronson Law Offices,

P.C., 480 Mamaroneck Ave., Harrison, NY 10528, attn.: H. Bruce Bronson, Esq. at 914-269-2530;

hbbronson@bronsonlaw.net.

**DATED:**         Harrison, New York
                   September 20, 2025

**1300 DESERT WILLOW ROAD, LLC**

**BY: Corniche SRY, LLC**

**By: /s/ *David Ebrahimzadeh***
        **David Ebrahimzadeh , Managing Member**

Bronson Law Offices, P.C.

By:      */s/ H. Bruce Bronson*
         H. Bruce Bronson