**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                          Chapter 11

  1300 Desert Willow Road, LLC,                                 Case No. 25-11375 (PB)

              Debtor.                                           <u>**NOT FOR PUBLICATION**</u>

------------------------------------------------------------x

<u>**BENCH DECISION DISALLOWING EQUITY FUNDING LLC'S CLAIMS**[1]</u>

<u>**APPEARANCES:**</u>

BRONSON LAW OFFICES, P.C.
*Counsel for the Debtor*
480 Mamaroneck Avenue
Harrison, NY 10525
By: H. Bruce Bronson, Jr., Esq.

U.S. DEPARTMENT OF JUSTICE
*Counsel for the Office of the United States Trustee*
One Bowling Green
New York, NY 10004
By: Shara C. Cornell

BRYAN CAVE LEIGHTON PAISNER LLP
*Counsel for Romspen Investment, LP*
One Wells Fargo Center, Suite 2150
Charlotte, NC 28202
By: Jarret P. Hitchings, Esq.

THE ESSES LAW GROUP, LLC
*Counsel for Equity Funding LLC*
445 Park Avenue, 9th Floor
New York, NY 10022
By: Leo L. Esses, Esq.

<u>**Hon. Philip Bentley**</u>
<u>**U.S. Bankruptcy Judge**</u>

---

[1] This decision was dictated on the record at the conclusion of the March 10, 2026 hearing on Romspen's motion to disallow Equity Funding's claims. It has been edited in limited respects—to clean up the transcript, to improve the decision's readability, and to add a few legal and factual citations—but the substance of the ruling has not changed. Given the decision's origins as a bench ruling, it has a more conversational tone and fewer citations than a memorandum decision.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 25-11375-pb

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

1300 DESERT WILLOW ROAD, LLC,

      Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**P R O C E E D I N G S**

We are here today on the motion filed by Romspen Investment, LP ("Romspen") to disallow or recharacterize the filed and scheduled claims of Equity Funding, LLC ("Equity Funding"). For the reasons I'll explain in a moment, I'm going to grant Romspen's motion and disallow Equity Funding's filed and scheduled claims in their entirety.

Let me begin with a very brief discussion of the procedural background. I assume familiarity with the facts of this case, which I set forth in some detail in a decision that I issued a few weeks ago, *In re 1300 Desert Willow Road, LLC*, 2026 WL 508285 (Bankr. S.D.N.Y. 2026).  I incorporate the facts stated in that decision by reference.

The Debtor originally scheduled Equity Funding's claim as contingent, unliquidated, and disputed. On October 20, 2025, Equity Funding filed a proof of claim in

2

the amount of $18 million, and it attached to the proof of claim two documents that I will discuss in more detail in a moment.  On February 5, 2026, Romspen filed a motion seeking to disallow Equity Funding's filed and scheduled claims or, alternatively, to recharacterize them as equity.  Equity Funding then responded, on March 3, 2026, and in support of its response, it filed a declaration of Derek Edmonds.  The Debtor also filed a short joinder to Equity Funding's opposition that same day.

No request was made in any of the papers to present witness testimony or evidence of any sort beyond the statements that were made in the one declaration that I just referred to.  Consequently, the record before me consists solely of the proof of claim, the two documents annexed to it, the Edmonds declaration, and the motion papers filed by the lawyers in connection with this claim objection.

Equity Funding argues that Romspen lacks standing to assert this claim objection, but the argument is utterly without merit.  There's no question that Romspen is a creditor, and the Bankruptcy Code explicitly gives creditors the right to be heard on any issue in a Chapter 11 case.  I'm referring to two Bankruptcy Code provisions.  First, section 1109(b), which provides that any "party in interest may raise and may appear and be heard on any issue in a Chapter 11

case." Section 1109(b) offers a non-exclusive list of parties in interest, and that list includes creditors. Second, section 502(a) specifically provides that a "party in interest" may object to a claim. Based on the express language of these Bankruptcy Code provisions, Romspen has standing to be heard.

I therefore don't need to discuss the Supreme Court's recent *Truck Insurance* decision, which liberalized the rules governing standing in bankruptcy cases. See *Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 272 (2024). But I would add that, in addition to the fact that Romspen is a creditor, the allowance or disallowance of Equity Funding's claims has a substantial impact on Romspen, most notably as a plan proponent, which under *Truck Insurance* gives Romspen the right to be heard with respect to those claims.

As discussed in my recent decision, *1300 Desert Willow*, 2026 WL 508285, at *2-3, Romspen is a plan proponent. The Debtor also has a plan on file, and in my recent decision, I put the Debtor's plan on hold in significant part based on my finding that, if Equity Funding's claims are disallowed, the Debtor's plan then would appear to be unconfirmable on its face. However, that decision is without prejudice to the Debtor's right to renew its request for approval of its disclosure statement if warranted by new developments, such

as the denial of Romspen's motion to disallow Equity Funding's claims.

That's one example of a way in which my decision on whether to allow or disallow Equity Funding's claims has enormous impact on Romspen. Disallowance of the claims will very likely leave Romspen as the only viable plan proponent in this case.

Beyond that, the treatment of Equity Funding is a key issue under Romspen's plan, as it was under the Debtor's plan. For example, Romspen's plan has, as a waivable condition to the effective date, that the Equity Funding claims be disallowed or withdrawn.

For these reasons, Romspen has standing not just because it is a creditor, but also because the issue before me has a very substantial potential impact on Romspen's rights and financial interests.

Let me turn now to the substance of Romspen's motion. I have carefully reviewed the two documents that are annexed to Equity Funding's proof of claim, and I find that these two documents provide substantial evidence that Equity Funding's claims lack merit and should be disallowed.

The first of these two documents, Exhibit A to the proof of claim, is an Amended and Restated Limited Liability Company Agreement dated November 20, 2023 (the "LLC Agreement") for

an entity by the name of 1300 Desert Willow Pref Eq, LLC ("Pref Eq").  The LLC Agreement is signed by Equity Funding and the Debtor's holding company, Corniche Sry, LLC.  The LLC Agreement notes that Pref Eq was the 100 percent shareholder of the Debtor, and Pref Eq, in turn, is indirectly owned by the Debtor's manager, Mr. David Ebrahimzadeh. Equity Funding has a preferred stake in Pref Eq.

Both the recitals of the LLC Agreement and its operative terms are very relevant.  The recitals state in substance that the Debtor and Equity Funding had initially entered into a loan arrangement.  The Debtor had given a note to Equity Funding, and Equity Funding had advanced $1.2 million prior to the execution of the LLC Agreement.  The recitals say that the parties wish to amend and restate that arrangement, and specifically that, "[i]n lieu of mak[ing] direct loans to [the Debtor], [Equity Funding will] fund the amounts . . . as capital contributions to [Pref Eq]."

Turning to the operative terms of the LLC Agreement, section 6.1 provides that the parties wish to change the legal character of all amounts loaned up to the date the LLC Agreement was signed.  Instead of those advances constituting loans to the Debtor, they will be treated as capital contributions from Equity Funding to Pref Eq.  In addition, section 6.2 of the LLC Agreement provides that any future

6

advances by Equity Funding will be in the form of capital contributions to Pref Eq, not loans to the Debtor.

Exhibit B to Equity Funding's proof of claim is also relevant.  Exhibit B is a document dated June 9, 2025 and captioned "Sixth Amendment of Acknowledgement of Sums Invested and Agreement."  This acknowledgment, in its recitals, confirms the parties' understanding of the legal effect of the LLC Agreement—namely, that all monies advanced by Equity Funding were capital contributions to Pref Eq, not loans to the Debtor.  In other words, as of last year, the parties were clearly on record as stating unambiguously that all monies advanced by Equity Funding that related to the Debtor were not loans to the Debtor.  Rather, they were capital contributions to Pref Eq, which was the Debtor's equity owner.

Let me turn now to another document relevant to this claim objection, namely, the declaration of Mr. Derek Edmonds in support of Equity Funding's opposition to Romspen's motion to disallow its claims.  The Edmonds declaration states, in a number of paragraphs that I'll address in more detail in a moment, that Mr. Edmonds understood that the funds advanced by Equity Funding were intended to be characterized as debt owed by the Debtor.

Before turning to those statements in detail, let me put

them in legal context.  The LLC Agreement, by its terms, is governed by Delaware law.  See section 13.3.  Delaware law is very clear that the parol evidence rule functions as a bar to "the admission of evidence extrinsic to an unambiguous, integrated written contract for the purpose of varying or contradicting the terms of that contract."  *Exit Strategy, LLC v. Festival Retail Fund BH, L.P.*, 326 A.3d 356, 364 (Del. 2024) (citation omitted).

In addition, Delaware law strictly adheres to an objective theory of contracts, which requires that "a contract's construction should be that which would be understood by an objective, reasonable third party."  *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1267 (Del. 2017).  Accordingly, "evidence of one side's undisclosed, private mental impressions or understandings is useless."  *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 835 (Del. 2007).

With those legal principles in mind, let me turn to the most relevant paragraphs of the Edmonds declaration.  First, paragraph 4 of that declaration states Mr. Edmonds' personal understanding that the funds advanced by Equity Funding were "to be repaid as debt."  But nowhere in his declaration does Mr. Edmonds claim that any document signed by the parties modifies the LLC Agreement.  He doesn't even claim there was

any oral modification, but if he did, that would not help him because section 13.5 of the LLC Agreement expressly prohibits oral modifications.   It permits modification of the LLC Agreement only by agreement signed by all parties. Accordingly, Mr. Edmonds' statement of his personal private understanding is of no import in construing the meaning of the LLC Agreement.

In paragraph 5, he makes a similar statement.  He states that the funds were "financing to be repaid," but the comments I just made are equally relevant to this.  This may have been his own personal understanding, but unless he identifies communications with the Debtor to this effect or, more precisely, signed agreements by the Debtor to this effect, his personal understanding is irrelevant.

Paragraph 7 is similar.  There, he states that he understood the payments were not intended to be equity investments.

In paragraphs 8 and 10, Mr. Edmonds claims that Equity Funding "treated the amounts as advances to or for the benefit of the Debtor."  But however Equity Funding treated these amounts in its own internal accounting or other documents is of no greater relevance than Mr. Edmonds' private, personal understanding.  It's settled under Delaware law that a party's internal records stating its understanding of the meaning of

a contract are irrelevant to the construction of that contract. See *Norse Petroleum A/S v. LVO International, Inc.*, 389 A.2d 771 (Del. 1978).

Mr. Edmonds' declaration also states, in paragraph 9, that it would not have been commercially rational for the parties to have entered into the arrangement that's reflected in the LLC Agreement. I disagree. It was entirely rational for the parties to have agreed that contributions or sums advanced by Equity Funding would be capital contributions, not loans to the Debtor.

At the time the LLC Agreement was entered into, in late 2023, the Debtor's financial condition was distressed. As I noted in my recent decision, there had been a number of departures of tenants at the Debtor's property in 2022, and following those departures, the property was more than 50 percent vacant from that point until the bankruptcy filing. See *In re Desert Willow*, 2026 WL 508285, at *1. When a debtor is in a distressed financial condition, as this Debtor clearly was in late 2023, it is perfectly understandable that the debtor's owner may extend debt on an equity basis, not a debt basis. Here it's even more understandable that this would be an equity contribution, not debt, because, as both parties acknowledge, Romspen's loan documents barred the Debtor from taking on subordinate debt. Equity Funding acknowledged that

point in the opposition it filed, and Romspen provided further detail in its reply.

At oral argument, Equity Funding's lawyer, Mr. Esses, said that if we had an evidentiary hearing, he might be able to show that there were subsequent communications among the parties by which the bar on the Debtor taking on subordinate debt was waived by Romspen. I am giving no weight to those statements for a couple of reasons. First, there's nothing to that effect in Equity Funding's papers.

Second, Equity Funding's counsel gave no specifics. I asked him whether these supposed discussions occurred before or after the LLC Agreement was entered into. He was unsure. He said it could have been before or it could have been after; it was at roughly the same time. If these supposed communications occurred before the LLC Agreement was executed, they clearly would be superseded by the terms of the LLC Agreement, which provided that all advances made by Equity Funding were capital contributions, not loans. And if they were made after, they would not be able to vary the terms of the LLC Agreement unless they took the form of an agreement signed by the parties. There's been no claim by Equity Funding, either in its papers or at today's argument, that any such mutually signed document was ever entered into—that is, that any signed document varied the terms of the LLC

11

Agreement.

For all of these reasons, I find that the Edmonds declaration and the statements made by counsel at today's hearing provide no basis to vary the unambiguous terms of Exhibits A and B to Equity Funding's proof of claim.

Let me turn finally to a procedural argument that Equity Funding made in its papers. It claimed that Romspen had not met its burden of proof. I find that argument is lacks merit. It's well established that there is a shifting burden of proof with respect to claim objections. If a claim is properly filed, it is prima facie evidence that the claim is valid. That's stated in Bankruptcy Rule 3001(f), and there's also ample case law confirming that, which I need not recite.

To overcome that prima facie effect, the objecting party must come forward with evidence that, if credited, would refute at least one of the allegations essential to the claim. See *In re Reilly*, 245 B.R. 768, 773, (B.A.P. 2d Cir. 2000). Here, the evidence that Romspen put forward in its motion was the very evidence that Equity Funding had annexed to its proof of claim, Exhibits A and B. As I've just discussed at length, I find those documents more than satisfy Romspen's burden. They clearly show that any funds advanced by Equity Funding were not loans to the Debtor. Instead, they were capital contributions to Pref Eq. For those reasons, I find that

12

Equity Funding's procedural argument lacks merit.

I note that Romspen has moved in the alternative for recharacterization of Equity Funding's claims. I have found that Equity Funding has no claims, and therefore I will not reach any of the recharacterization issues that the parties have briefed and argued.

That completes my bench ruling.


Dated: April 1, 2026
       New York, New York

/s/ *Philip Bentley*

Honorable Philip Bentley
United States Bankruptcy Judge