UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (MANHATTAN)

| | |
|---|---|
| IN RE: | Case No. 25-11375 |
| | Chapter 11 |
| 1300 DESERT WILLOW ROAD, LLC, | |
| | **NOT FOR PUBLICATION** |
| Debtor. | |

**BENCH DECISION DENYING EXIT FINANCING MOTION AND GRANTING SALE MOTION**[1]

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Bronson Law Offices, P.C.<br>By: H. BRUCE BRONSON, JR., ESQ.<br>480 Mamaroneck Avenue<br>Harrison, NY 10525-0023<br>(877) 385-7793 |
| Transactional Counsel for the Debtor: | Nixon Peabody<br>By: CHRISTOPHER R. FROEB, ESQ.<br>Exchange Place<br>53 State Street<br>Boston, MA 02109-2835<br>617-345-1000 |
| For the U.S. Trustee: | DOJ-UST<br>By: SHARA C. CORNELL, ESQ.<br>Alexander Hamilton Customs House<br>One Bowling Green, Room 534<br>New York, NY 10004<br>(212) 510-0503 |

[1] This decision was dictated on the record at the conclusion of the September 10, 2026 hearing on these two motions. The Court has made minor edits to correct and clarify the transcript but has made no changes of substance. The decision assumes familiarity with the facts of the case. See In re 1300 Desert Willow Road, LLC, 2026 WL 2172297 (Bankr. S.D.N.Y. July 21, 2026); In re 1300 Desert Willow Road, LLC, 677 B.R. 176 (Bankr. S.D.N.Y. 2026).

Given the decision's origins as a bench ruling, it has a more conversational tone and fewer legal citations than a memorandum decision.

For Romspen Investment LP, as Agent and Servicer:

Bryan Cave Leighton Paisner LLP
By: JARRET P. HITCHING, ESQ.
One Wells Fargo Center, Suite 2150
Charlotte, NC 28202
(312) 602-5000

Bryan Cave Leighton Paisner LLP
By: DANIEL WEISS ODENTHAL, ESQ.
120 Broadway, Suite 300
Santa Monica, CA 90401
310-576-2100

Bryan Cave Leighton Paisner LLP
By: KATIE E. SPEWAK, ESQ.
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
314-259-2000

For Hollow Way Partners, LLC:

Katten Muchin Rosenman, LLP
By: MATTHEW BREEN, ESQ.
50 Rockefeller Plaza
New York, NY 10020
212-940-3878

Katten Muchin Rosenman, LLP
By: RACHEL M. RILEY, ESQ.
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
214-765-3639

For Pacific Fusion Corporation:

Wilson Sonsini Goodrich & Rosati
By: EVANTHEA HAMMER, ESQ.
222 Delaware Ave., Suite 800
Wilmington, DE 19801
301-304-7600

| | |
|---|---|
| For Niagara Bottling, LLC: | Pillsbury Winthrop Shaw Pittman<br>By: ANDREW V. ALFANO, ESQ.<br>31 West 52nd Street<br>New York, NY 10019<br>212-858-1051 |
| | Pillsbury Winthrop Shaw Pittman<br>By: JOSHUA D. MORSE, ESQ.<br>Four Embarcadero Ctr., 22nd Floor<br>San Francisco, CA 94111-5998<br>415-983-1202 |
| | Marshack Hays Wood LLP<br>By: DAVID A. WOOD, ESQ.<br>870 Roosevelt<br>Irving, CA 92620-3663<br>949-333-7777 |
| For Cascade Capital Group, LLC, Plan Administrator: | Law Office of David M. Banker, PLLC<br>By: DAVID M. BANKER, ESQ.<br>43 West 43rd Street, Suite 451<br>New York, NY 10036<br>646-402-5136 |
| Also Present: | Cleary Gottlieb Steen & Hamilton LLP<br>By: THOMAS S. KESSLER, ESQ.<br>KALEINANI NALLIRA, ESQ.<br>SEAN A. O'NEAL, ESQ.<br>One Liberty Plaza<br>New York, NY 10006<br>212-225-2000 |
| | RYAN ALTMAN<br>UDAY GORREPATI<br>MARK CALVERT<br>HAIM DADI<br>JAMES DOUNTAS<br>DAVID EBRAHIMZADEH<br>CASANDRA H. MESTREZAT<br>MICHAL STAVROS<br>DENIS STRATFORD<br>HENRY THOMAS<br>WILL UYESUGI<br>ED WACKER |

**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

THE COURT: We are here on two motions, the debtor's motion for approval of exit financing and the motion to approve the proposed sale of the debtor’s real property pursuant to Romspen’s proposed plan of liquidation.

I'm going to rule first on the debtor's motion for approval of exit financing. I'm going to deny this motion, which suffers from a host of problems. The debtor styles the motion as one for Court approval of exit financing. It says it's seeking approval of $33 million in financing, which is the amount the debtor would need to pay off the Romspen loan and to escrow the additional amounts that could be required if Romspen wins its appeal of my recent decision.

However, the motion is unlike any motion for approval of debtor financing that I've ever seen. There's no loan agreement attached, nothing like it, just two term sheets, which do not provide a binding commitment to advance the $33 million that the debtor needs. The debtor has not provided any evidence apart from these term sheets. It has not put in any declarations. It has not requested an evidentiary hearing to present live testimony. It has just put in these term sheets. One of the term sheets is with a lender by the name of Golden Bridge for a loan of up to $23 million, a maximum of $23 million. The other term sheet is with a separate lender by

the name of Hollow Way to fund the additional $10 million needed to bring the total to $33 million.

Problem number one with these two term sheets, when looked at together, is that the Hollow Way term sheet expressly says it's non-binding. It expressly states that it creates no legal rights on the part of the debtor. And Hollow Way's counsel confirmed at today's hearing that Hollow Way's position is that its term sheet is not legally binding. And so even if the Golden Bridge term sheet were legally binding and unconditional, which it is not, even if it were, it wouldn't achieve the goal that the debtor seeks to achieve -- that is, to raise $33 million in exit financing -- unless the debtor was able to get a similarly binding and unconditional term sheet from Hollow Way. There's no evidence whatsoever that we're on the verge of getting a binding term sheet from Hollow Way, just a statement of the debtor's counsel and Hollow Way's counsel that the parties are engaged in active and ongoing discussions.

Even putting aside the problems raised by the non-binding nature of the Hollow Way term sheet and looking only at the Golden Bridge term sheet, the Golden Bridge term sheet is problematic in multiple respects. Unlike the Hollow Way term sheet, it purports to be a binding commitment, but the commitment is subject to a number of contingencies. Most important, it's contingent on approval by Golden Bridge's credit committee. There's absolutely no restriction on the

ability of Golden Bridge's credit committee to walk away from this commitment for any reason or no reason at all. So in that sense, it is a non-binding term sheet.

In addition, the term sheet expressly states that it expires today, September 10. No evidence has been presented that the expiration date is about to be extended. There isn't even a representation by counsel that it's about to be extended. So as far as I can tell, based on the record before me, it's going to expire at the end of today without having been approved by the credit committee, and the debtor will have nothing remotely approaching a binding financing commitment.

I will note one other issue, although this is very much belt and suspenders. The Golden Bridge term sheet is missing a signature, and it's impossible for me to tell from the record whether this is a critical signature that stands in the way of a Golden Bridge financing moving forward. One of the required signatures on the signature page is by Mr. Ebrahimzadeh's family trust. There's no signature there, and there's no explanation of why that signature is missing or whether the absence of that signature indicates potentially serious problems.

For all of those reasons, we don't have any financing before the Court for me to approve. That's really all I need to say in order to deny the motion. But let me add that there are a few additional complications as well. And I'm adding

these in part because Mr. Bronson has made clear his client may wish to continue making efforts to obtain financing and may want to come back to the Court with a better set of motion papers and try to obtain Court approval. If he does, he's going to need to show new circumstances. He may need to make a motion for reconsideration of today's ruling.

Let me mention some of the additional issues that any new motion by the debtor would need to address. The starting point for these additional points is that we are in the very late stages of this bankruptcy. I confirmed Romspen's plan of reorganization some months ago. The plan provided for the appointment of a plan administrator with full and exclusive power to manage the debtor. The plan administrator was also charged with conducting the auction of the debtor's property, which has resulted in the proposed sale to Niagara Bottling that I'll be addressing shortly in my second bench ruling.

The upshot is that the debtor's management no longer has the power to act for the debtor. For example, the debtor's management no longer has the power to incur debt on behalf of the debtor's estate or to encumber the assets of the debtor's estate. If it wanted to do that, it would need to seek leave of court. And, of course, the financing that the debtor is asking me to approve would be debt incurred on behalf of the debtor's estate, and it would encumber the debtor's assets. Yet the motion before me doesn't address that issue. It

doesn't seek leave to do that. It doesn't seek a modification of the plan or the confirmation order with respect to that issue.

Now, it's true that there is a single sentence in the confirmation order that says that the order is without prejudice to the debtor's right to pay off the Romspen loan. But that's all it says. It's just a single short sentence. It does not say that the debtor can encumber the debtor's estate with debt, let alone secured debt, in order to pay off the loan. It may be implicit in that sentence that the debtor might seek leave to do that, but it doesn't obviate the need for the debtor to seek leave.

A payoff by the debtor, if it actually were to be proposed, would raise a number of significant issues. As I mentioned, I've already confirmed Romspen's plan of liquidation. That plan provides for full payment of all administrative, priority and general unsecured claimants. In the event the debtor were to pay off Romspen's loan, it's not at all clear what would happen to payment of any creditor other than Romspen. It seems quite clear the Romspen plan would not proceed. It's been confirmed, but it wouldn't go effective in that scenario. And so one issue that would need to be addressed is what, if anything, would be done with respect to payment of those other claims. The general unsecured claims in this case are very modest. They appear to be only about $50-

60,000. But the priority and administrative claims may be significant, and they would need to be paid.

In any event, that's all I need to say about those issues. There's no need and no occasion at present to go into those issues further because there's no real financing proposal before me, just something that's not much more than a hope and a prayer.

That completes my ruling on the debtor's motion for approval of exit financing. I will deny that motion, and I'll ask that Romspen settle an order consistent with my opinion.

Let me turn now to my bench ruling on the motion to approve the sale of the debtor's real property to Niagara Bottling, the winning bidder in the recently conducted auction, pursuant to Romspen’s confirmed plan of liquidation. I'm going to grant the motion, subject to resolution of one significant issue involving the Government's potential forfeiture claim. I'll address that issue at the end of my ruling.

Let me start with a little bit of procedural background. As I mentioned in the bench ruling I just delivered, I confirmed Romspen's plan of liquidation earlier this year. The plan documents included amended bid procedures for the sale of the debtor’s real property, which I approved at the same time. I’ll refer to those simply as "the bid procedures."

Pursuant to the bid procedures, an auction was held

on August 25 of this year, just a few weeks ago. Niagara Bottling, LLC, which I'll refer to as "Niagara" or "Niagara Bottling," was declared the winning bidder. It made a $30 million cash bid. There was only one other qualified bidder. That was Romspen, which submitted a credit bid up to the amount of its allowed secured claim. Its bid also included enough cash to satisfy the payments required to be made under the plan.

The debtor also submitted a bid, but it was not a qualified bid under the bid procedures. Among other things, the bid was in the amount of $5 million, which is grossly below the minimum bid specified in the bid procedures, namely $30 million. It was a tiny fraction of the minimum required bid.

The plan administrator and Romspen each filed papers seeking approval of the winning bidder last month. The papers included two supporting declarations. One was by Mark Calvert, the managing director of Cascade Capital Group, which is the plan administrator. The other declaration was by James Dountas, a senior VP at CBRE, the real estate agent engaged to market the property under the plan administrator's direction. Together, those declarations showed that the plan administrator conducted a robust marketing effort, followed by an auction, all consistent with the approved bid procedures.

Only one objection to the sale motion has been filed,

namely the debtor's objection. Notably, the debtor does not dispute that a robust and proper marketing and auction process was conducted. Rather, the debtor only raises certain limited objections, which I'll turn to in a few moments.

Let me turn now to the legal standards governing approval of sales under Bankruptcy Code section 363. It's settled that the overarching objective of a bankruptcy sale is to maximize value to the estate. See, e.g., In re Publishers Clearing House LLC, 2025 WL 1805885, at *4 (Bankr. S.D.N.Y. June 30, 2025). Courts in this circuit require that sales under Section 363 be based on the sound business judgment of the debtor or trustee. See id.

These standards are amply satisfied by the two declarations, which, as I've already mentioned, show that a robust sale process was conducted. As I said, the debtor has advanced only limited objections to the sale motion. The debtor does not contend that there were any improprieties in connection with the sale process or that it was anything other than a robust and proper process. Based on the declarations, I'm satisfied that the sale of the debtor's property to Niagara reflects a sound exercise of the business judgment of the debtor's plan administrator and is the best path to maximize the value of the debtor's estate. And that Niagara is a good-faith purchaser entitled to protection under Bankruptcy Code section 363(m).

The sale motion also seeks approval of Romspen as the backup bidder in the event the Niagara sale fails to close. I find that it's proper to approve Romspen as the backup bidder. As I noted earlier, Romspen was the only other qualified bidder in the auction.

I raised one issue at today's hearing concerning my approval of Romspen as the backup bidder, and Mr. Hitchings responded by committing that he will submit a revised form of sale order providing that Romspen is bound to substantially the same terms that bind Niagara Bottling under the APA, other than the one obvious difference between the two bids, namely, that Niagara Bottling has made a cash bid, whereas Romspen has made a credit bid supplemented by a modest amount of cash. Other than that, Romspen will commit to be bound by substantially the same terms as in the APA. On that basis, I approve Romspen as a backup bidder in the event the sale to Niagara Bottling fails to close.

Let me turn now to the limited objections the debtor has raised. They fall into two categories. First, that the debtor was not provided with sufficient information concerning the sale process as it proceeded. And second, that the debtor needs more time to try to obtain the financing it needs to pay off Romspen's debt.

Before addressing those two sets of objections, I'll first note that the debtor did not back up its objections with

much, if any, evidence. The debtor submitted no declarations in support of its objection. It also, on this motion as on the other motion, did not request an evidentiary hearing at which it could present live testimony. As a result, both of its objections fail for lack of proof.

Starting with the objection that the debtor was provided insufficient information, I find that the debtor has not identified any particular information that the plan administrator was required to give it but failed to give it. It's worth noting in this regard that under the bid procedures, the debtor was not designated as a consultation party, and so it had only limited rights to information about the process as it proceeded. So that objection is not supported by any evidence.

The other objection concerns timing, and this objection also is unsupported. The debtor argues that Romspen unduly delayed in providing it with a payoff letter specifying the amount that the debtor would need to pay if it wanted to pay off the Romspen loan. I've reviewed the record and considered the arguments that counsel made at today's hearing, and I'm not persuaded that there was any undue delay on Romspen's part. To the contrary, Romspen appears to have proceeded in good faith and reasonably expeditiously in responding first to the debtor's request for a payoff letter, and then to the debtor's requests for corrections or

clarifications of the initial payoff letter.

Beyond complaining about delays in getting the payoff letter, the debtor argues more generally that it needs more time to obtain financing, and it argues that everybody will benefit if it succeeds in obtaining financing. In the first place, I have to consider these arguments in light of the history of this bankruptcy, which has been before me for some time. The debtor and its principal, Mr. Ebrahimzadeh, have said on a number of occasions that they were close to obtaining financing to pay off Romspen's claim. That has been a recurring theme throughout the bankruptcy. And according to Romspen, it is something the debtor repeatedly said before the bankruptcy as well.

I addressed this in my July 21, 2026 bench decision, where I found ruled as follows:

> According to Romspen, the Debtor has repeatedly said, both before and during the bankruptcy, that it would soon be able to put together a refinancing to take out Romspen's loan, but these promises have never come to fruition. I have no way of knowing whether the debtor's current expectation of a refinancing is accurate or just another hope on its part that again will not come to fruition.

1300 Desert Willow Road, 2026 WL 2172297, at *10.

My thinking on this has not changed. And in fact,

the representations and arguments we heard today sound awfully similar to the representations I have heard on more than one prior occasion in this case. As a result, I can’t help but have some skepticism about the likelihood of those promises coming to fruition.

In addition, the plan does not give the debtor any right to hold up the sale. To the contrary, the amended bid procedures that I approved in connection with confirmation of Romspen's plan provide a schedule to market and sell the debtor's property. The plan administrator complied with that schedule, and certainly did not accelerate that schedule.

No provision of the plan gives the debtor any right to delay that schedule. The one sentence that the debtor points to in the confirmation order, the last sentence of Paragraph 8 of that order, says that the debtor reserves the right to pay off Romspen's loan if it can, but it doesn't say the debtor has the right to hold up the sale process if it believes it needs more time to obtain financing to pay off Romspen's loan.

Finally, the reasons for the debtor's inability to have financing lined up by now don't appear to be principally the result of Romspen not having given the debtor a final payoff letter until August 25. They appear to be due at least as much, perhaps more, to other reasons, such as the fact that Mr. Ebrahimzadeh was indicted within the past year -- I believe

it was last December – by a federal grand jury in Massachusetts on six felony fraud counts.

As far as I am aware, and as far as can be told from the record, that indictment is still pending. It seems just common sense that that indictment would raise issues in the minds of anybody who is considering making a loan to this debtor with Mr. Ebrahimzadeh back in charge of the debtor. The indictment charged that Mr. Ebrahimzadeh committed fraud in connection with obtaining financing for his various real estate properties. In light of that indictment, any lender would presumably have questions about whether his word can be trusted.

Some of the discussion at today's hearing provided specific grounds to believe the pending indictment may be impeding the debtor’s ability to obtain binding financing commitments. In particular, Romspen disclosed that the title company has expressed concern that the Government might seek to enforce forfeiture remedies against Niagara Bottling as the buyer. That sounds like a serious issue, potentially a very serious issue.

Now that that issue has reared its head, it stands to reason that the willingness of the several potential lenders with which the debtor has been speaking, namely Golden Bridge and Hollow Way, to provide financing might very well be on hold until that title issue is resolved. One would assume neither

of them is going to provide financing unless the debtor is able to obtain title insurance. And what we learned today, what I learned today, is that Mr. Ebrahimzadeh's indictment may pose a very serious hurdle to the debtor's ability to obtain title insurance.

I am mentioning all this in connection with the debtor's objection to the sale motion because the debtor is arguing I should give it more time to obtain financing. And the point I am making is that the argument for giving more time to the debtor so that Mr. Ebrahimzadeh can pay off the loan and get back the property is weakened by the fact that his delays in being able to get financing appear to be due in significant part to the fact that he is under indictment.

Let me turn now to the issue involving the Government that was raised for the first time at today's hearing. As I mentioned, Romspen's counsel disclosed at the hearing that the title company that Niagara Bottling is hoping to use in connection with its acquisition of the property very recently expressed concerns that the Government might seek to enforce its civil forfeiture remedies against Niagara Bottling as the buyer of the property. Romspen's counsel pointed out that he didn't want to overstate the concern. He pointed out that the Government has not said it has any intention of doing this. The Government has not filed anything or said anything to the debtor or to Romspen to that effect, at least anything that

Romspen is aware of.

But the title company raised a concern, understandably, that it is at least conceivable that the Government could do this, and a concern along those lines would obviously give any title company pause. Romspen has proposed to deal with this issue by adding provisions to the sale order stating that the sale of the property to Niagara Bottling is free and clear of any claim the Government might have arising out of the indictment of Mr. Ebrahimzadeh.

The procedural problem this raises is that the Government has not received notice of these proposed provisions. Obviously, these provisions could have very significant consequences for the Government. And obviously the Government is entitled to notice of these proposed provisions and to a proper opportunity to object if it wishes to do so. I had some back and forth with Romspen's counsel at the hearing about how to deal with this. And where we came out is that Romspen will, today or in the next few days, serve the Government with its revised proposed sale order, the version that contains the free and clear language that I just mentioned.

And Romspen will tell the Government it has 14 days to object if it wishes to do so. And the Court will then schedule a hearing to be held at least seven days after that objection deadline, with the expectation that if the Government

does not object, we will not have another hearing. Rather, at that point, if there is no objection, I will enter the sale order. If the Government does object, we will have a continued hearing -- a continuation of today's hearing -- but that hearing will be limited to the Government's objection and any issues arising from the Government's objection.

I think this approach is a sensible one and a proper one. So I approve this approach. After I complete my bench ruling, we should have some discussion on the record about the details of exactly when Romspen is going to serve the Government, how they are going to serve them, and when this potential continued hearing will occur. But those are details. This general approach makes sense to me, and I approve it.

So for the reasons I have just described, I will approve the sale motion, on the understanding that entry of an order approving the sale motion will be deferred to give the Government a proper opportunity to object if it wishes to do so. And as I said, if the Government does not object, I will then enter the proposed sale order. If the Government does object, I will address its objections, and we will see where that takes us.

That completes my ruling.

Dated: October 4, 2026
New York, New York

/s/ Philip Bentley
United States Bankruptcy Judge